State v. Holme.

————o————

THE STATE OF MISSOURI, Respondent *vs.* ANTON HOLME, Appellant.

1. *Practice, criminal—Trials—Calling the jury.*—The provision in the statute (W. S., 800, § 25,) that the clerk of the court in a criminal case shall call the jury to be impaneled, is directory.

2. *Practice, criminal—Errors—Reversal.*—No error, that is not a violation of some positive rule of law, or which may not possibly prejudice the defendant, can be a ground for reversal on appeal.

3. *Practice, criminal—Trials—Errors—Impaneling the jury.*—In a criminal case the failure to call the first twelve names on the list for the jury, after the challenges are exhausted, is a violation of the statute, (W. S., 800, § 25,) and, the defendant having objected at the time to the course pursued, is a substantial error, and the case must be reversed.

4. *Practice, criminal—Instructions—Reversal.*—A cause will not be reversed, although unobjectionable instructions were refused, if those given completely covered the case.

5. *Practice, criminal—Murder—Malice—Presumption—Statute, construction of.*—Unless the circumstances from which the jury may presume malice, are proved, the law will presume under the statute (W. S., 445 § 1,) that the unlawful killing was murder in the second degree.

6. *Practice, criminal—Murder in the first degree.*—If the party killing, had time to think, and did intend to kill, for a minute, as well as for an hour or a day, it is a deliberate, willful and premeditated killing, constituting the crime of murder in the first degree.

7. *Practice, criminal—Murder in the first degree—Malice, presumption of—Justification or palliation.*—As a general rule of law, every homicide is deemed malicious, unless it is shown that it was justified, excused or palliated; the proof of justification, excuse or palliation resting upon the accused, when the homicide is proven, unless evolved in the testimony produced by the accusing party.

8. *Practice, criminal—Defense of insanity—Question of fact.*—The defense of insanity in a criminal case is a question of fact for the decision of the jury. (State vs. Hundley, 44 Mo., 414.)

9. *Practice, criminal—Adultery—Killing wife or paramour—Mitigation.*—In order to mitigate to manslaughter, the crime of killing the wife or her paramour by the husband, the husband must discover them in the act of adultery, unless the provocation was so recent and strong that he could not be considered at the time master of his own understanding.

10. *Practice, criminal—Unlawful killing—When reduced to manslaughter.*—In order to reduce the crime of unlawful killing of a person to manslaughter, the reason of the accused must at the time of the act be disturbed or obscured by passion to an extent, which might render a reasonable person liable to act rashly, without deliberation, and from passion rather than judgment, and generally, the provocation must occur in the presence of the injured party, for then the law presumes that he acts upon sudden impulse.

*Appeal from St. Louis Criminal Court.*

*Michael B. Jonas*, for Apellant.

I. The jury should have been selected by the clerk of the court from the first twelve names remaining on the list unchallenged. (W. S., 800, § 25; State vs. Hays, 23 Mo., 287.)

II. The court erred in defining " deliberately and premeditatedly " in the first instruction given. (Comm. vs. Drum, 58 Penn. St., 9; 9 Whar. Homicide, [Ed .1855] 368–372; Bouv.Law Dic. " Deliberation and Premeditation;" 2 Whar.Am. Crim. Law, 133 ; Dale vs. State, 10 Yerg., [Tenn.] 551; Anthony vs. State, 1 Meigs, [Tenn.] 265.)

III. Express malice or malice in fact is requisite to be proved. (Bower vs. State, 5 Mo., 364, dissenting opinion; State vs. Phillips, 24 Mo., 475; State vs. Starr, 38 Mo., 270; Comm. vs. Drum., 58 Penn. St., 9; Comm. vs. O'Hara, 2 Va. Cases, 86 ; Whiteford vs. Comm., 6 Rand., 721; Wilson vs. People, 52 N. Y., reported in Am. Law Rev. for Oct·1873, p. 42; Mitchell vs. State, 5 Yerg., 352; Short vs. State, 7 Yerg., 510; Coffee vs. State, 3 Yerg., 283; Witt vs. State, 6 Cold., 5.; Comm. vs. York, dissenting opinion of Judge Wilde, 9 Met., 125; Maher vs. People, 10 Mich., 218; Shoemaker vs. State, 12 Ohio, 53; State vs. Turner, Wright, 28; Lisbon vs. Lyman, 49 N. H., 553.)

IV. It is not necessary to reduce the offense to man-

slaughter that the wife shall be found in the act of adultery. (Maher vs. People, 10 Mich., 212.)

V. It is a true test of manslaughter, that the homicide be committed in a sudden transport of passion, arising upon a reasonable provocation and without malice. The authorities use the terms "adequate, sufficient and reasonable," when applied to the provocation, as equivalent. (1 East R. C., 232; 1 Whar. Cr. Law, § 987; 2 Bish, Cr. Law, § 630 and n.; Young vs. State, 11 Humph., 200, and authorities cited.)

VI. A reasonable provocation is one for which a good reason can be given, and which might naturally and rationally, according to the laws of the human mind, produce the alleged sudden transport of passion.

*J. C. Normile*, for Respondent.

I. The law (W. S., 800, § 25,) directing the impaneling of juries, was substantially complied with. Such laws are merely directory. (Sedg. Stat. and Const. Law, 368; 1 Grah. & Wat. New Trial, 537; Birchard vs. Booth, 4 Wis., 67; Clarke vs. Comm., 29 Penn. St., 129; Bristow vs. Comm., 15 Gratt., 634; State vs. Gut 13 Minn., 341.)

II. Mistakes or omissions of officers in impaneling juries when no fraud or collusion is intended, and no injury results to the defendant, is no ground for a new trial. (1 Grah. & Wat. New Trials, 35–6, 40; Steele vs. Malony, 1 Minn., 347; Thrall vs. Smiley, 9 Cal., 529.)

III. "In matters of form in impaneling a jury, the courts both in Great Britain and this country, have refused to interfere when points merely technical and unproductive of any injury have been presented; and have by a series of decisions placed all applications of this kind within the principle of judicial discretion." (1 Grah. & Wat., 37; Forsythe vs. State, 6 Ohio, 19.)

IV. It is no ground for reversal to refuse giving an instruction which has already been given in another form. (Maston vs. Fanning, 9 Mo., 305; Webb vs. Browning, 14 Mo., 354; Huntsman vs. Rutherford, 13 Mo., 465; Darby vs. Charless, 13

Mo., 600; Pond vs. Wyman, 15 Mo., 175; State vs. Floyd, 15 Mo., 349; Phillips vs. Smoot, 15 Mo., 598; State vs. Smith, 31 Mo., 566; Beale vs. Cullum, 31 Mo., 258.)

WAGNER, Judge, delivered the opinion of the court.

The counsel for the appellant in this case have urged and insisted that the court below committed many errors in its rulings; but after a careful scrutiny of the record, we find the objections are nearly all so technical and unsubstantial in character, that they require no consideration at our hands. Such as seem to have any merit we will proceed to notice.

It appears, that after the requisite number of jurors had been called and examined, and the prosecution and defense had both exercised their right of challenge, there still remained fifteen qualified jurors competent to try the cause. The court then directed the marshal to call a jury of those who were unchallenged. And he proceeded to call the same, but omitted to call the names of M'Cutcheon and Stratman, who were among the first twelve of the fifteen, and as the jurors were so called, their names were recorded by the clerk.

The prisoner, by his counsel, objected to the marshal calling the jurors, and also objected to the panel as then constituted. Both objections were overruled.

The statute in reference to the impaneling of juries provides, that the sheriff or other officer, summoning a jury, shall deliver to the clerk a list of the names of all jurors summoned, who shall strike from such list the names of all persons excused by the court, or challenged for cause, or peremptorily challenged by the parties; and he shall record in his minute book the first twelve names remaining on the list; and the jurors, whose names are thus recorded, shall be the jury to try the cause for which they are selected. (W. S., 800, § 25.)

The objection, that the marshal instead of the clerk, called the names of the jurors, is unavailing. The calling is a matter of mere form. And although the statute designates the clerk as the proper person, that part may safely be regarded as directory. So that the persons, whom the law

State v. Holme.

points out as the jurors, are selected and impaneled, it is im-material who records and calls their names.

But the objection, that two of the persons, whose names were among the first twelve on the list, were omitted to be called, and thereby excluded from the jury, presents a more grave and serious question. The law is peremptory, that the first twelve names remaining on the list shall be recorded, and that the names thus recorded shall be the jury to try the cause for which they are selected.

The first twelve constitute the properly selected jurors, and neither party can be deprived of this legal selection without his consent.

In looking over the list of names of those summoned and returned by the officer, the party relying upon the statutory provision, that the first twelve names remaining shall be the jury selected to try the cause, may be entirely satisfied with them, and therefore decline to exercise his privilege of making peremptory challenges.

But if the court may disregard this provision, and arbitrarily refuse to have the first twelve called, and call others in their stead, then surely he has not obtained the jury that he selected.

If the court may refuse to have two called among the first twelve, it may refuse a half a dozen, and if it is not bound to take the first twelve, it may take the last twelve. Such a practice would not only set at defiance the plain mandates of the statute, but it would lead to a confusion and uncertainty utterly destructive of the right of parties.

It is however contended, that, admitting that the statute was not followed, it does not appear that the prisoner was injured by the action of the court, and therefore, it should be disregarded.

In 1 Graham and Waterman on New Trials, p. 38, it is laid down, that in mere matters of form in impaneling a jury, the courts, both in Great Britain and this country, have refused to interfere, where points merely technical and unproductive of any injury have been presented; and have by a series of deci-

sions placed all applications of this kind within the principle of judicial discretion.

A few cases will be adverted to in illustration of the principle, where the courts refused to interfere on the ground that the party was not injured.

Thus, in the State vs. Hays, (23 Mo., 287,) when the cause was taken up for trial, the defendant moved the court to compel the State by her Circuit attorney to make her peremptory challenges to the panel before the defendant should be compelled to make his peremptory challenges, which the court refused to do, and compelled the defendant to strike from the panel his peremptory challenges, without knowing which of the panel the State would strike off upon her peremptory challenges, making both parties challenge at the same time.

To this ruling the defendant excepted. On appeal to this court, Mr. Justice Ryland, in delivering the opinion, said, "The record does not show us how this was done. There might have been thirty-six jurors present, free from all objection. Then the State having four peremptory challenges, and the defendant twenty, the remaining twelve would be the jury. If so, the defendant has not been deprived of any advantage or legal right. He has challenged his twenty, but he says he may have challenged some of those who had been challenged by the State, and had he known whom the State would have challenged, it would have given him the power to have challenged others. All this may be so, and still he has lost no right or privilege. He had the thirty-six men from whom the jury were to be selected. The State could refuse four, and he twenty. No one of the jurors was put on his panel against his right, nor in violation of his right. Suppose the State's four and his twenty were confined, as it is possible they might be, to the same twenty men, leaving sixteen behind, why then the State has just as much right to complain of having lost her four challenges, because she did not know those whom he would challenge, as he has. The first twelve then called will make the jury. And the fact,

State v. Holme.

that there are sixteen out of which to make a jury instead of twelve, can surely be no deprivation of any right or privilege."

It will be perceived, that the case thus cited, differs widely from the one at bar.

There the prisoner made his challenges, and the first twelve remaining on the panel were duly called and sworn, as the jury selected to try the cause. But it is clearly announced in the decision, that the first twelve remaining on the list would be the jury, and so Mr. Justice Story on the Circuit, in deciding upon this subject, held, that after the challenges were exhausted the first twelve remaining would make up the jury. (U. S. vs. Marchant, 4 Mason, 158.)

I readily concede, that for a mere informality or mistake in impaneling a jury, where no injury ensues, a verdict will not be set aside, nor a new trial granted.

In the case of The King vs. Hunt, (4 Barn. & Ald., 430) where a special jury was ordered and only ten jurymen appeared, two of those named in the panel not having been summoned, and two talesmen were sworn on the jury. On motion for a new trial it was contended, that it was indispensable that the whole panel should be summoned; that the statute was imperative, and that if two could be omitted, so might any other number, and there would be a selection of particular persons to try the cause. But in overruling this motion, the court, by Abbott, Ch. J., said:

"No case has been cited, which is a direct authority on this question, so as to form a ground for our decision. We must, therefore, look to the principle on which this application is founded. There has been, in this case, an omission to summon two of the special jury. * * * It is not suggested in this case, that the omission has been in consequence of any collusion with any other person. If then, on these affidavits, we were to grant a rule, we should intimate it to be our opinion, that in every case which may be tried, whether civil or criminal, if the party, against whom the verdict passes, chooses to apply, he will be entitled as of right to a new trial, in case he shows to the court, that any one juryman has not been

duly summoned to attend. This would be going a great deal too far. I think, therefore, that we ought not to grant this rule."

So, in Cole vs. Perry, (6 Cow., 584,) which may be considered a case of gross carelessness, but, no abuse or injury appearing to the party, a new trial was refused. It was moved, that the verdict be set aside on the ground of irregularity in drawing the petit jurors. The names of the jurors summoned and impaneled at the Circuit, were written on several and distinct pieces of paper, being all as near as might be of equal size, and put into boxes open at the top by an orifice of about five inches in diameter, from which they were drawn to compose the several juries; they were not rolled or folded together, and the names of the jurors were easily and distinctly visible to the person drawing. But the court say : " The statute relied upon is merely directory to the officer drawing the ballots. We have often holden this in relation to statutes of a similar character. No abuse or injury to the defendant being pretended, and no objection made at the time, the mistake of the officer is not a ground for setting aside the proceedings."

The above cases, and the principle they announce, are all distinguished and separated by a clear line of demarcation from the one we are now considering.

These were cases where irregularities merely, were committed, which could not possibly redound to the injury of the party, or where the party had not made his objections at the appropriate time.

No error, that is not a violation of some positive rule of law, or which may not possibly prejudice the defendant, can be a ground for reversal on appeal ; but it is with great hesitancy, that the courts will say in a criminal case that an error does not prejudice the defendant. In the present case a positive rule of law is violated, and the statute, which declares that certain persons shall be selected to try the cause, is set at naught, and other persons substituted in their place. And this is done against the objections of the defendant made at the time. In this action we think the court committed a substantial error.

We will now pass to a brief review of the instructions. There was no error in the court's refusing the first and sixth instructions offered by the defendant. There was no sufficient evidence to justify these instructions, and the first one asserted an incorrect proposition of law. . Moreover the instructions given by the court completely covered the whole case, and, if they were correct, we will not reverse because the defendant asked for other instructions which were unobjectionable.

The defendant was indicted for murder in the first degree in killing his wife, Ida Holme, and our statute, which defines the crime, declares, that every murder, which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree. (W. S., 445, § 1.) This statute has modified the common law rule as to the inference of malice and intent. From the simple act of killing the law will presume, that it was murder in the second degree only. To raise it to a higher grade of murder in the first degree, there must be some circumstances shown, from which the jury can find that it was done with willfulness and premeditation.

Our statute is a literal transcript of an old statute in Pennsylvania, and we have invariably followed the construction put upon it by the courts in that State. The language of this court has uniformly been, that under the statute it is held that, unless the circumstances of malice are proved, the law will presume the unlawful killing murder of the second degree. Under the act, the unlawful killing is presumed to be murder, but not murder in the first degree. Whenever it appears from the whole evidence, that the crime was at the moment deliberately, or intentionally, executed, the killing is murder in the first degree; as if one, without uttering a word, should strike another on the head with an axe or other dangerous weapon, this would be deemed premeditated violence within the act. It will constitute the offense, if the

circumstances of willfulness and deliberation were proven, although they arose and were generated at the period of the transaction. If the party killing had time to think, and did intend to kill, for a minute as well as for an hour or a day, it is a deliberate, willful and premeditated killing, constituting the crime of murder in the first degree. (State vs. Dunn, 18 Mo., 419; State vs. Hays, 23 Mo., 287; State vs. Starr, 38 Mo., 270.)

In a recent case in Pen'vania (Comm. vs. Drum, 58 Penn. St., 9,) Judge Agnew states the settled construction placed upon the act, as follows: "In this case we have to deal only with that kind of murder in the first degree described as willful, deliberate and premeditated. Many cases have been decided under this clause in all of which it has been held, that the intention to kill is the essence of the offense. Therefore, if an intention to kill exists, it is willful: If this intention be accompanied by such circumstances as evidence a mind fully conscious of its own purpose and design, it is deliberate; and if sufficient time be afforded to enable the mind fully to frame the design to kill, and to select the instrument, or to frame the plan to carry this design into execution, it is premeditated. The law fixes upon no length of time as necessary to form the intention to kill, but leaves the existence of a fully formed intent as a fact to be determined by the jury from all the facts and circumstances in the evidence. * * * * * The proof of the intention to kill, and of the disposition of mind constituting murder in the first degree under the act of Assembly, lies on the Commonwealth: But this proof need not be express or positive. It may be inferred from the circumstances. If, from all the facts attending the killing, the jury can fully, reasonably and satisfactorily, infer the existence of the intention to kill, and the malice of heart with which it was done, they will be warranted in so doing.

"He, who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, as an axe, a gun, a knife or a pistol, must, in the absence of qualifying facts, be presumed to know that his blow is likely

to kill; and knowing this, must be presumed to intend the death, which is the probable and ordinary consequence of such an act. He, who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly or from a bad heart. Therefore he, who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without any sufficient reason or cause or extenuation, is guilty of murder in the first degree."

Tested by these principles we have been unable to find any error in the instructions given by the court on this branch of the case. The first instruction tells the jury that to constitute murder in the first degree, according to the provisions of the statute of this State, the homicide or killing must have been committed by the party accused, willfully, deliberately, premeditatedly, and with malice aforethought; that if the party killing had time to think, and did intend to kill, for a moment as well as an hour or a day, then such killing is deliberate, willful, and premeditated killing, and then, when the act is committed deliberately, with a deadly weapon, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed; for the law infers that the natural or probable effect of any act deliberately done is intended by its actor.

In the same connection the court told the jury, that in regard to malice, as a general rule of law, every homicide is deemed malicious, unless it is shown that it was justified, excused or palliated; the proof of justification, excuse or palliation resting upon the accused, when the homicide is proven, unless evolved in testimony produced by the accusing party. Throughout the whole instruction it will be perceived, that the court charges that it is necessary that the act of killing should have been done deliberately in order to constitute murder in the first degree. The instruction is in fact taken from the opinions of this court on the subject, and has long since been considered the well settled and firmly established doctrine in this State.

The prisoner relied on insanity and provocation. It need only be said in reference to insanity, that we held in the State vs. Hundley, (46 Mo., 414,) that that was a question of fact to be submitted to and determined by the jury, like any other fact in the case, and the ruling of the court was in substantial compliance with that decision. The jury, after a consideration of the evidence, found by their verdict that no insanity existed, and we will not review their finding in that respect.

The remaining points arise on the fourth and fifth instructions. They are as follows:

Fourth—"If you believe and find from the evidence, that the defendant killed the deceased by reason of any former grudge against her, or because of his knowledge or suspicion of her infidelity to his bed, and that he committed the act of killing willfully, deliberately, and maliciously, you should find him guilty of murder in the first degree."

Fifth—"Where a man finds his wife in the act of adultery with another man, and at the moment he kills either his wife or her paramour, then the law, though not justifying the killing, mitigates the offense to manslaughter, because the character of the injury is such as the law presumes to excite that passion in the mind of the slayer, which precludes the idea of premeditation or malice. But it is only where the wife has been discovered in the actual act of adultery, that the law grants mitigation on the ground of passion."

There can be no valid ground urged against the fourth instruction. If the slaying was done willfully and deliberately to satisfy a prior, existing grudge, or upon a mere suspicion of improper conduct on the part of the wife, there is no justification in law. The evidence fully warranted the instruction, for it showed that long previous to the homicide the defendant procured the knife with which he committed the act, and that he habitually carried it, and had often threatened the life of the deceased. No man can be allowed to take a human life upon a mere suspicion of personal injury, and, if he does intentionally do so under such circumstances, he will be guilty of murder in the first degree.

There was really no evidence justifying the giving of the fifth instruction. The case does not show that on the night the homicide was committed, the accused found his wife in the act of adultery, or that in fact there was any other person with her; but it does show, that the wife was and had been for years a notorious prostitute, that she visited houses of ill-fame, and had prostitutes boarding with her, and that men were accustomed to come to the house to visit them. Of all this the defendant was well advised. He was perfectly aware of the character of his wife, and continued to live with her. He knew the prostitutes in the house, and ate at the same table with them. Under such circumstances, had he even discovered her in the act of adultery, it is very doubtful whether the law would have had much regard for any sudden passion displayed by him. At best the instruction was an abstract proposition of law, and not warranted by the testimony, though it could hardly have injured the defendant.

It is insisted nevertheless, that it was calculated to mislead, and that it was not sound as a declaration of law. But the court is abundantly supported by the authorities on the question. With one single exception, so far as my researches have extended, the books are unanimous. It is true, that if a homicide be committed under the influence of passion, or in heat of blood produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement by which the control of reason was disturbed, rather than any wickedness of heart or cruelty or recklessness of disposition, the offense is manslaughter only, and not murder.

But to reduce the offense to this grade, the reason must at the time of the act be disturbed or obscured by passion to an extent which might render a reasonable man liable to act rashly, without deliberation, and from passion rather than judgment. Therefore the cause of provocation must generally occur in the presence of the injured party; for then the law presumes that he acts upon a sudden impulse, without delib-

eration and before the blood has had time to cool. Park J., in Regina vs. Fisher, (8 Car. & P., 182), in speaking of the cause of provocation, says: "In all cases the party must see the act done." Bishop lays down the law in the same way. He says, "Thus, if a husband finds his wife committing adultery, and, provoked by the wrong, instantly takes her life or the adulterer's, or if a father detects one in the commission of the crime against nature with his son, and immediately avenges the wrong by the death of the wrong doer, the homicide is only manslaughter. But to entitle it to this tender consideration, the detection must be in the very act, which is supposed to stir so powerfully the blood of the injured person as to impair for the moment his reason; and if, after merely hearing of such an outrage the wronged individual immediately takes vengeance on the other, by pursuing and killing him, his offense is murder." (2 Bish. Crim. Law, § 638, citing 1 Hawk P. C., 98, § 36; Foster, 298; Reg. vs. Kelly, 2 Car. & K., 814; Pearson Case, 2 Lewin, 216; The State vs. John, 8 Ired., 330.)

In a case in Michigan (Maher vs. The People, 10 Mich., 212) the rule received a partial qualification. The prisoner offered evidence tending to show the commission of adultery by H. with the prisoner's wife. Within half an hour before the assault, the proof showed that the prisoner saw them going into the woods together under circumstances calculated strongly to impress upon his mind the belief of an adulterous purpose; that he followed after them to the woods; that they were seen not long after coming from the woods, and that the prisoner followed on in hot pursuit, and was informed on the way that they had committed adultery the day before; that he followed H. into a saloon in a state of excitement, and there committed the assault. The court held, that the evidence was proper as from it, it would have been competent for the jury to find that the act was committed in consequence of the passion excited by the provocation, and in a state of mind which would have given to the homicide had death ensued, the character of manslaughter only. The evidence showed, that the prisoner in following H. from the woods was laboring under

State v. Holme.

great excitement, that, when a friend told him on the way what had happened the day before, his passion was increased, and that, when he arrived at the saloon, the perspiration had broken out all over his face.

But of that case it may well be observed, that the facts were all so recent, and so commingled together that they might all be considered as a part of the *res gestæ*, and hence admissible because making up a part of the same transaction· In cases of that kind, where the prisoner is smarting under a provocation so recent and strong that he cannot be considered as being at the time the master of his own understanding, the offense may be reduced to manslaughter, but as a general principle for the interest and well being of society the old rule is the better one.

We have now considered this whole record, and the most serious objection that we have been able to find is in the action of the court in impaneling the jury. As the law says, that the first twelve names remaining on the list shall be recorded, and they shall be the jury to try the cause for which they are selected, we do not feel at liberty to sanction the substitution of others in their place. If two may be set aside by the court of its own motion, so may the whole twelve if there are twenty-four remaining on the list, and thus the last instead of the first would be the jury. The statute is plain and easily carried out, and we are not inclined to approve a practice which needlessly and clearly violates it.

Wherefore the judgment must be reversed and the cause remanded. The other judges concur.