The State v. Albert and Charles Talbott.

THE STATE v. ALBERT AND CHARLES TALBOTT, *Appellants.*

1.  **Criminal Law**: DEFENDANT'S STATEMENTS AS EVIDENCE FOR OR AGAINST HIMSELF. What defendant has said against himself the law presumes to be true, because against himself; what, however, he has said for himself the jury are not bound to believe, because said in a conversation proved by the State; but they may believe or disbelieve it according as it is shown to be true or false by the evidence in the case.

2.  ———: MURDER: PROOF OF THE CRIME. While it devolves upon the State to prove the willfulness, premeditation and malice necessary to constitute the crime of murder in the first degree, yet these elements need not be proved by direct evidence, but may be deduced from the facts and circumstances attending the homicide.

3.  ———: DUTY OF THE JURY IN CONSIDERING THE VERDICT. The defendant cannot complain of an instruction to the jury that they have no right to permit their feelings of sympathy to interfere with their duty, whatever that may be under the law and evidence, nor on the other hand, to allow any considerations of public policy or over-anxiety to enforce the law to influence them in the fair consideration and decision of the case, otherwise than strictly in accordance with the evidence in the cause.

4.  **Murder**: HARMLESS ERROR IN INSTRUCTION. It is error to instruct the jury as to murder in the second degree, where there is no testimony tending to prove any crime but murder in the first degree. If, however, the verdict is murder in the first degree, the judgment will not be reversed for the error.

5.  **Impeaching Evidence**: PRACTICE. Where an effort is made to discredit a witness by showing that he has testified differently on a former occasion, if his testimony as then given was reduced to writing, the party calling him will be entitled to read the whole of it, and not simply so much of it as relates to the precise matter as to which he is alleged to have contradicted himself.

6.  **Evidence**: PRACTICE. The trial court ruled that if certain evidence were admitted, the other side would be entitled to offer certain other evidence in rebuttal; and thereupon the proffered evidence was withdrawn. *Held*, that if there was any error in this ruling the party injured was in no position to avail himself of it. He should have offered his evidence, and then, when his adversary offered his evidence, he should have made his objection.

7.  **Evidence**: WITNESS, WHEN NOT BOUND TO ANSWER. When the question asked of a witness is of such a character that the answer he may give will have a tendency to expose him to a penal liability, or

to any kind of punishment, or to a criminal charge, he is not bound to answer.

8. ———: ADMISSIONS OF ONE OF SEVERAL CO-DEFENDANTS. Where two are jointly indicted and tried, statements made by either are admissible in evidence against him, though they may implicate the other and were not made in his presence. In such case it is proper for the court, by instructions, to point out to the jury that the statements are only evidence against him who made them.

9. Evidence in Rebuttal. On the trial of a murder case, the mother of the defendants, contradicting the State's evidence, testified that the relations between the defendants and the deceased (their father) were friendly. In rebuttal the State was allowed to show that defendants' mother, in speaking of a difficulty between herself and her husband shortly before the homicide, said: "If Bud (one of the defendants) had had a pistol he would have shot him, but never mind, he is prepared for him now." *Held,* that this evidence was properly admitted.

10. Impeaching Evidence. A letter is not admissible in evidence for the purpose of impeaching a witness, unless there is some proof that it was written by him.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*Dawson & Roseberry* and *Johnson & Anthony* for appellants.

*D. H. McIntyre,* Attorney General, for the State.

HENRY, J.—At the November term, 1880, of the Nodaway circuit court, the defendants and Henry Wyatt were jointly indicted for the murder of Dr. Perry A. Talbott. At the same term, on motion of Wyatt, a severance was granted him, and these defendants were arraigned and pleaded not guilty, and the cause was continued to an adjourned term of said court held in January, 1881, at which a trial was had, resulting in their conviction of murder of the first degree, and from the judgment thereon they have appealed.

Except proof of admissions and statements made by

defendants, the evidence was circumstantial, but we are not prepared to say that it did not authorize the verdict, and shall, therefore, proceed to examine the questions upon which the court is alleged to have committed error in the progress of the trial.

The evidence proved that Dr. Talbott was assassinated while sitting in a room of his residence with members of his family on the night of the 18th day of September, 1880. He was shot by some one without the house about eleven o'clock at night, and lived until about four o'clock p. m. next day. He made no statement with respect to the tragedy, although rational and conscious that he could live but a short time. The day after he was shot he made his will and testament, by which he disposed of all his property, a considerable estate, to his wife and children, including these defendants. Each of the defendants made statements implicating himself in the murder, and the testimony of Wyatt was to the effect that they had previously planned the murder of their father and communicated the fact to witness, and that on the night in question Charles took the shotgun upstairs, and when the doctor returned from visiting a sick child in the neighborhood, Albert took the mule the doctor had ridden to the stable, and Charles went down-stairs and about a minute after Charles went down, Albert having returned in the house, witness heard the shot and they both told him that Charles did the shooting. There was evidence of frequent quarrels between the doctor and the defendants, and of a want of affection and respect on their part for him.

The court gave the following instructions for the State, against the objections of defendants:

1. Under the law, as declared in the instructions of the court, and the evidence as offered on the trial under the instructions of the court, it is the duty of the jury to find the defendants not guilty, or guilty of murder either in the first or in the second degree, as they may believe the fact to be. And the jury may find both the defendants

guilty of murder in either of said degrees, or they may find one guilty and acquit the other, accordingly as they may believe the facts to be from the evidence in the case.

2.    If the jury believe from all the evidence, beyond a reasonable doubt, that at the time mentioned in the indictment, in this county, the defendants, Charles E. Talbott and Albert P. Talbott, willfully, deliberately, premeditatedly, and of their malice aforethought, killed Perry H. Talbott by shooting him with a shotgun, or any kind of firearms, they will find the defendants guilty of murder in the first degree, and so state in their verdict.

3.    Willfully, as used in the foregoing instruction, means intentionally—that is, not accidentally.    Therefore, if defendants intended to kill, such killing is willful.    Deliberately means done in a cool state of the blood—that is, not in a heated state of blood caused by lawful provocation.    If, therefore, in such state the defendants formed a design to kill, and did kill, the act was deliberately done. Premeditatedly, as used in the second instruction, means thought of beforehand for any length of time, however short.    Malice, as used in said instruction, signifies a condition of the mind void of social duty and fatally bent on mischief or an unlawful intention to kill or do some great bodily harm to another without just cause or excuse. Aforethought means thought of beforehand for any length of time, however short.

4.    If the jury believe from all the evidence, that on or about the 18th day of September, 1880, in this county, the defendants, with intent to kill, willfully, premeditatedly and of malice aforethought, but without deliberation, as these terms have been defined, shot and killed Perry H. Talbott, the jury will find defendants guilty of murder in the second degree, and so state in their verdict, and assess their punishment separately at imprisonment in the penitentiary for any period not less than ten years.

5.    If the jury believe from the evidence that the defendants, Albert P. Talbott and Charles E. Talbott, made

any statements after the commission of the homicide, and in relation thereto, the jury must consider all that each one said together, and what one of them said cannot be used against the other, unless assented to or acquiesced in by the other; and while each of said defendants is entitled to what he said for himself, if true, the State is entitled to anything he said against himself in any conversation proved by the State. What each defendant said against himself the law presumes to be true, because against himself; what, however, he said for himself, the jury are not bound to believe, because said in a conversation proved by the State; but they may believe or disbelieve it accordingly as it is shown to be true or false by the evidence in the case.

6. He who willfully, that is, intentionally, uses upon another, at some vital part, a deadly weapon, as a loaded gun or firearm, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act; and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart. If, therefore, the jury believe that defendants took the life of Perry H. Talbott by shooting him in a vital part with a shotgun or other firearm, loaded with gunpowder and a leaden bullet, with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or extenuation, then such killing is murder in the first degree; and while it devolves on the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree; yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing; and if the jury can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendants guilty of murder in the first degree

7. Although it is charged in the indictment that Charles E. Talbott fired the fatal shot, and that Henry Wyatt and Albert P. Talbott were present, aiding, abetting, helping, comforting, maintaining and assisting the said Charles E. Talbott to kill and murder Perry H. Talbott, yet it is not necessary for the State, in order to establish the guilt of either of the defendants now on trial, to prove that either of them actually held and discharged the gun which killed Perry H. Talbott; but if the jury believe that said Henry Wyatt, or either of the defendants on trial, fired the fatal shot, and that the other defendant was present, aiding, abetting, helping, comforting, maintaining and assisting the said Wyatt or the other defendant in such killing, then such defendant is guilty of murder equally with said Wyatt or the other defendant, who the jury may believe actually fired the shot.

8. It is the duty of the court to instruct the jury as to the law arising in this case, and it is the duty of the jury to respect the instructions of the court as the law of the case, and to find the defendants guilty or not·guilty, according to the law as delivered by the court, and the evidence as they receive it from the witnesses under the directions of the court. The jury have no right to permit their feelings of sympathy to interfere with their duty, whatever that may be under the law and evidence, nor on the other hand to allow any considerations of public policy or over-anxiety to enforce the law to influence them in the fair consideration and decision of the case, otherwise than strictly in accordance with the evidence in the cause.

9. If the jury believe from all the evidence in the case, beyond a reasonable doubt, that either of the defendants is guilty of murder in the first or second degrees, as these degrees have been defined by the instructions, but have a doubt as to the degree of which such defendant is guilty, the jury will give him the benefit of such doubt and find him guilty of murder in the second degree.

10. Before the jury can convict the defendants·of

murder either in the first or the second degree in this case, they must believe from all the evidence, beyond a reasonable doubt, that they are guilty; but such a doubt, to authorize an acquittal, must be a real substantial doubt, and not a mere possibility of innocence.

The following are the instructions of the court to the jury on the behalf of the defense:

1. Unless the jury believe from the evidence, beyond a reasonable doubt, that at the time mentioned in the indictment the defendants, Albert P. and Charles E. Talbott willfully, deliberately, premeditatedly and of their malice aforethought, did shoot and kill Perry H. Talbott, then the jury will find the defendants not guilty of murder in the first degree. And the jury are instructed that the term willful, as used above in this instruction, in law means done intentionally; that the word deliberately, means that the design to kill must have been formed in the mind in a cool state of blood, that is, not in a heated state of the blood, caused by lawful provocation. That the term premeditatedly, means thought of and determined beforehand, and the term malice, means a state of mind evidenced by a wrongful act, done intentionally, without just cause or excuse.

2. The jury are further instructed that before they can find the defendants, or either of them, guilty of the murder of said Perry H. Talbott, in either the first or second degree, as defined in the instructions given in the case, the evidence must be so conclusive that the homicide of said P. H. Talbott cannot be accounted for on any other reasonable grounds or hypothesis than that of the guilt of the defendants.

3. The jury are instructed that the witness, Henry Wyatt, is jointly indicted with the defendants now on trial, and is charged as an accomplice with the defendants in the commission of the offense alleged against them, and that the prosecution has a right to use him as a witness; yet the evidence of an accomplice, when not corroborated

23—73

by the testimony of others not implicated in the crime, as to matters material to the issue, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict defendants on such testimony.

4. To the jury alone belongs the duty of weighing the evidence and determining the credibility of the witnesses. The degree of credit due to a witness should be determined by the jury, by his character and conduct, by his manner upon the stand, his relation to the case and to the parties, his hopes and his fears, his bias or impartiality, the reasonableness or unreasonableness of the statements he makes, the strength or weakness of his recollection, viewed in the light of the other facts and circumstances in proof; and if the jury believe that any witness has willfully sworn falsely as to any material fact in this case, they may disregard the whole of the evidence of any such witness.

5. The law clothes the defendants with the presumption of innocence, which attends and protects them until it is overcome by testimony which proves their guilt beyond a reasonable doubt—which means that the evidence of their guilt as charged, must be clear, positive and abiding, fully satisfying the minds and consciences of the jury. It is not sufficient in a criminal case to justify a verdict of guilty that there may be strong suspicions or even strong probabilities of guilt, but the law requires proof by legal and credible evidence of such a nature, that when it is all considered, it produces a clear, undoubting and entirely satisfactory conviction of defendant's guilt. And the burden of establishing the guilt of the defendants, as above required, is on the prosecution.

The instructions asked by the defendants, and refused by the court, were as follows:

6. The jury are the judges of the weight of the testimony, and the credibility of the witnesses; and may give to the testimony of any witness just such weight and value

as they may think it entitled to under all the facts and circumstances in the case; and if from such facts and circumstances they believe that any witness willfully swore falsely as to any material fact, they are at liberty to disregard the whole of such witness' testimony.

7. In order to form a proper estimate of the weight and value of the testimony of any witness, the jury may take into consideration the conduct and demeanor of such witness while on the witness stand, his interest in obtaining a reward offered in case of conviction of the defendants, and also the character of such witness for honesty, integrity, virtue and veracity.

8. The jury are instructed that the witness, Henry Wyatt, is a co-defendant, jointly indicted with the defendants now on trial, and that the prosecution has a right to use him as a witness, and that the jury may consider his evidence for what they may think it worth, but that the testimony of a co-defendant, or one jointly indicted with those on trial must and should always be received with extreme caution, and should be carefully weighed and closely scrutinized by the jury, and they should not convict upon it unsupported, unless it produces in their mind the fullest and most positive conviction of its truth.

9. This is a case of circumstantial evidence, and one in which a conviction is claimed on the grounds of confessional guilt. The jury are, therefore, instructed that evidence of this character should be received by them with extreme caution, and the jury will not be warranted in finding the defendants, or either of them, guilty, as charged in the indictment, unless the evidence and circumstances in proof are of such a nature, after being duly weighed and considered by the jury, as to exclude every other reasonable hypothesis, except that of the guilt of the defendants.

The fifth, sixth and eighth for the State are complained of: the fifth " because a comment on certain parts of the evidence and calculated to mislead the jury to the preju-

dice of the defendants;" the sixth because "a mere abstraction," and "because it ignores the necessity of proving deliberation and premeditation, and tells the jury in substance, that from the unlawful use of a gun they must presume the other ingredients of murder," and because it tells the jury that "qualifying facts necessary to extenuate the crime of murder must be shown by the defendants;" and the eighth "because a mere abstraction."

The fifth instruction is not "a comment on parts of the evidence," but a proper enunciation of the law in relation to statements made by defendants as has been repeatedly held by this court. *State v. Hollenscheit*, 61 Mo. 302; *State v. Hays*, 23 Mo. 287; *State v. West*, 69 Mo. 401; *State v. Curtis*, 70 Mo. 594.

1. CRIMINAL LAW: defendant's statements as evidence for or against himself.

The sixth instruction, so far from being open to the criticism made upon it, expressly recognizes the doctrine that it devolves upon the State to prove the willfulness, premeditation and malice necessary to constitute the crime of murder of the first degree, and in stating that these elements need not be proved by direct evidence, but may be deduced from the facts and circumstances attending the homicide, it is in harmony with numerous decisions of this court. *State v. Holme*, 54 Mo. 153; *State v. Hays, supra; State v. Hollenscheit, supra; State v. Starr*, 38 Mo. 270; *State v. Foster*, 61 Mo. 549; *State v. Underwood*, 57 Mo. 40; *State v. Lane*, 64 Mo. 320. The meaning of the instruction taken in connection with those preceding it, clearly is, that from the facts, if found, that defendants killed Dr. Talbott by shooting him in a vital part with a shotgun charged with powder and a leaden ball, with a manifest design to use such weapon upon him, with sufficient time to deliberate and form the purpose to kill, and without sufficient cause, or extenuation, such killing was murder in the first degree, and that the willfulness, malice and premeditation necessary to constitute that crime might be inferred from all the established facts attending

2. ——: murder: proof the crime.

the homicide. In other words, that although the State must prove malice, premeditation and willfulness, it is not required to furnish direct evidence establishing them, if the facts attending the homicide would authorize the jury to infer their existence. Malice is a condition, and premeditation and willfulness are acts or operations of the mind, and can only be established by proof of physical facts indicating that such mental conditions existed, and that such mental operations had occurred; hence, to require direct evidence of either would render a conviction impossible where they are constituent elements of a crime.

The eighth instruction might have been omitted, but it correctly states the duty of the jury, and a state of public feeling may have existed which made it proper to declare to them their duty, and we cannot see how, in any event, it could possibly have prejudiced the defendants.

3. ——: duty of the jury in considering the verdict.

The instructions asked by the defendants and refused, assert no legal proposition not embraced in those given. The ninth, in substance, requested the court to declare a distinction between direct and circumstantial evidence not recognized by law.

The third instruction for the State, and the first for the defense, contain an error which is immaterial in this cause, and is only noticed for fear its sanction might be inferred from our silence. It declares deliberation to mean " done in a cool state of the blood—that is, not in a heated state of the blood caused by a lawful provocation," thus declaring in effect every willful homicide for which there is no excuse or justification to be murder in the first degree, unless committed in heat of blood caused by lawful provocation. This is in direct conflict with the doctrine announced by this court in the cases of *State v. Wieners*, 66 Mo. 13; *State v. Curtis*, 70 Mo. 594; *State v. Cooper*, 71 Mo. 436, and *State v. Edwards*, 71 Mo. 312, and we can but express our surprise that such an instruction should have

been given by the court, and especially that it should have been asked for the defense.

The fourth instruction for the State was wholly unauthorized by the evidence, which had no tendency to prove

4. MURDER: harmless error in instruction.
any crime, except murder in the first degree. It was that or nothing. The person or persons who shot the deceased, either did it accidentally or in the perpetration of as cold-blooded a murder as has ever been committed in this State, and no instruction with respect to murder of the second degree should have been given. *State v. Hopper*, 71 Mo. 425. Defendants were found guilty of murder in the first degree, and the fourth instruction could not, therefore, have operated unfavorably against them.

The defendants asked Brighton, a witness for the State, if he did not make a certain statement in his testimony on

5. IMPEACHING EVIDENCE: practice.
a preliminary trial, to which the State's attorney objected, and the court overruled the objection, but announced that if he answered, the State would have the right to read the whole of the written testimony of the witness on that occasion; and thereupon defendant withdrew the question. In the brief of counsel it is stated that the court declared that the State would be permitted to read the whole of that written testimony, both relevant and irrelevant. The record, however, contains no such statement, and the language of the court cannot be construed to mean what counsel assert the court declared.

The *State v. Phillips and Ross*, 24 Mo. 485, is cited by appellants' counsel as sustaining the position that the State could only read such portions of the testimony of the witness at the preliminary trial as were connected with the statement to which his attention was called, or related to the same subject. That case is an authority directly to the contrary. See also *Prewitt v. Martin*, 59 Mo. 333. There is a distinction in this respect between oral statements, by which it is sought to impeach a witness, and documentary evidence. The section of Mr. Greenleaf's Evidence, (§

467,) cited by appellants' counsel, in support of their view, relates to oral statements. The distinction is recognized in all the books.

But even if the doctrines announced by the court were incorrect, the defendants should have pressed their inquiry

6. EVIDENCE; practice. and made their objections when the State offered to read portions of the testimony which did not relate to the subject matter of the question propounded with a view to discredit the witness.

The witness was asked if he did not know at the time he was married to his wife that she then had another hus-

7. EVIDENCE: witness, when not bound to answer. band living, from whom she had not been divorced, to which an objection by the State was sustained. Mrs. Brighton was asked if she had not a husband living from whom she had not been divorced, when she married the witness, Brighton; and the court, on an objection made by the State, told the witness she might answer, or not as she pleased, and she declined to answer. She was also asked if she had not, before she and Brighton were married, communicated to Brighton the fact that she had such husband living, and the court sustained the State's objection to any answer by the witness. The witnesses could not be compelled to answer these questions. The answer might, and if affirmative, would have exposed them to prosecution and punishment for bigamy. "When the answer which the witness may give will not directly and certainly show his infamy, but will only tend to disgrace him, he may be compelled to answer." Greenleaf Ev., § 456. "When the answer will have a tendency to expose the witness to a penal liability, or to any kind of punishment or to a criminal charge," the witness is not bound to answer. Ib., § 451; *Cundell v. Pratt*, Moody & W. 108.

Nor was there any error in admitting the testimony of Leighty detailing a conversation he had with Charles,

8. ——: admissions of one of several co-defendants. at which Albert was not present. They were jointly indicted and tried, and what Charles said after the homicide, was certainly

evidence against him, although not against Albert; and this the court declares in the fifth instruction for the State. If they had severed, what Charles said to Leighty would have been inadmissible on the trial of Albert, but they were tried jointly, and that fact did not deprive the State of the right to introduce Charles' statements as evidence against him, notwithstanding they also implicated Albert; and the court could not otherwise break their force against Albert than by an instruction such as was given.

Mrs. Belle Talbott, widow of the deceased, was introduced as a witness for the defense, and testified that her 9. EVIDENCE IN RE- husband and the defendants were on good BUTTAL. terms, contradicting the State's evidence on that point. She was asked if on the 27th day of June, 1880, at her residence, she did not tell Mrs. Ann Hosher of a difficulty between herself and her husband on a certain occasion, and say to Mrs. Hosher that "if Bud (Albert) had had a pistol he would have shot him, but never mind, he is prepared for him now." She said she had not, and Mrs. Hosher was introduced, and against defendants' objection, permitted to testify that such a conversation occurred, and that Mrs. Talbott made that statement. The state of feeling on the part of defendants toward their father, was a legitimate subject of inquiry. Mrs. Talbott was offered to show that it was such as should be entertained by children for parents, thereby contradicting the evidence for the State on that point, and evidence impeaching her in that respect was competent.

A witness, Mitchell, introduced by the State, testified to admissions of their guilt made by defendants to him. 10. IMPEACHING A letter purporting to have been written by EVIDENCE. Mitchell to Wyatt, before the murder of Dr. Talbott, proposing to Wyatt the assassination of the doctor, was shown to the witness, and he denied that he wrote it. It was proved by the defense that it was found in the pocket of an old coat which had been worn by Wyatt. No other evidence whatever was introduced to prove that

it was written by Mitchell, and the court properly excluded it from the jury. Even if proven to have been written by Mitchell, its admissibility as evidence is questioned by highly respectable courts. *Munshower v. State*, recently decided by the court of appeals of Maryland, and not yet reported except the syllabus. See 11 Reporter 535. But, without passing upon that question, it is very clear that, until proven to have been written by Mitchell, the defense had no more right to introduce it than if it had been proved to have been written by another person. As there was no evidence of its authenticity against Mitchell, the court did right in not submitting that question to the jury.

We have considered all the questions presented by the record, and have failed to discover that any error was committed on the trial of the defendants, which would warrant a reversal of the judgment against them, and it is, therefore, affirmed. All concur.