## THE STATE v. TABOR, *Appellant.*

1.  **Criminal Law**: PRACTICE: EVIDENCE. Evidence of another crime is never admissible in the trial of a criminal cause, unless it is so connected with the one then being investigated as to show that the commission of the former had something to do with the commission of the latter, or unless such other crime is shown to belong to a system of mutually dependent crimes of which the one on trial forms a part.

2.  ———: INTENTIONAL USE OF DEADLY WEAPON: PRESUMPTION. One who intentionally uses upon another a deadly weapon, at some vital part, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and must be presumed to intend death, and where such weapon is so used without just cause or provocation it must be presumed to have been done wickedly or from a bad heart.

3.  ———: ———: DELIBERATION. Where one so takes the life of another, after sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason, cause, or extenuation, such killing is murder in the first degree.

4.  ———: PRACTICE: DELIBERATION: BURDEN OF PROOF. While it devolves upon the state to prove wilfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree, they need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing.

5. ———: BRINGING ON DIFFICULTY: SELF-DEFENCE: PRACTICE: INSTRUCTION. Where the evidence does not show which party to a difficulty brought it on, it is error to give an instruction on the law of self-defence as applied to the aggressor in such difficulty.

6. ———: SELF-DEFENCE. Self-defence is the law of necessity and is not to be invoked except when other means fail, or are apparently likely to fail, owing to the fierceness of the assault, or for some other equally strong reason.

7. ———: PRESUMPTION ARISING FROM KILLING: BURDEN OF PROOF. Where a homicide is proved, or admitted by the defendant, and no countervailing circumstances are evolved by the testimony for the prosecution, the burden is cast upon the defendant of showing to the reasonable satisfaction of the jury such circumstances of excuse or palliation as will take away the presumption drawn by the law that the killing was murder in the second degree, and that he is guilty of a less crime, or that the homicide was committed in self-defence.

8. ———: PRACTICE. Where the evidence shows a defendant to be guilty either of murder in the first or second degree, or of manslaughter in some degree, an instruction upon the law of self-defence should not be given.

*Appeal from Cass Circuit Court.*—HON. C. W. SLOAN, Judge.

REVERSED AND REMANDED.

*H. Clay Daniel, Geo. Bird* and *W. D. Summers* for appellant.

(1) The court erred in admitting the verbal evidence of J. W. Ruthven, foreman of the penitentiary, who testified that defendant had been sent to the penitentiary from Vernon county under the name of Richard Clark, to his escape from the penitentiary, and his identity, which are all matters of record. *Blondeau v. Sheridan,* 81 Mo. 545; R. S., secs. 6508, 6509. (2) The court erred in admitting the record of the Vernon county circuit court showing a conviction of one Richard Clark for any

purpose. *State v. Turner*, 76 Mo. 350; *State v. Reavis*, 71 Mo. 419; *State v. Greenwade*, 72 Mo. 298; *State v. Martin*, 74 Mo. 547; *State v. Hart*, 66 Mo. 208; *State v. Creson*, 38 Mo. 372. (3) The court erred in giving instruction numbered four at the instance of the state. *Donahoe v. Railroad*, 83 Mo. 560; *Chouteau v. Iron Co.*, 82 Mo. 73; *Green v. Parker*, 85 Mo. 107; *State v. Laurie*, 1 Mo. App. 371; *Dunn v. Dunnaker*, 87 Mo. 597. (4) The court erred in giving instruction numbered six, of its own motion. (5) The court erred in giving instruction numbered twelve, of its own motion. It was error in the court to give this instruction, because there was no evidence whatever to support it, and its only effect was to prejudice the jury against the defendant. *Bonine v. City*, 75 Mo. 437; *Condon v. Railroad*, 78 Mo. 567; *Utley v. Tolfree*, 77 Mo. 307; *Brown v. Ins. Co.*, 86 Mo. 51; *Bank v. Armstrong*, 62 Mo. 265.

*B. G. Boone*, Attorney General, *Whitsett & Jarrott* and *Railey & Burney* for the state.

(1) In his first proposition defendant complains of the admission of the oral testimony of the foreman of the penitentiary, to the effect that defendant Tabor is the same person who came to the penitentiary from Vernon county, under the name of Clark, and escaped therefrom, on the ground that these were matters of record. The fact that Clark was convicted of crime in Vernon county, and sent to the penitentiary, and was there under the name of Clark, were matters of record; but that this was the same man who was on trial could not possibly be a matter of record. It was purely a question of identity. How could it be shown by any record that Tabor was the person who was in prison under the name of Clark? We think the question answers itself. (2) There is no objection to the copy of the judgment and sentence from the Vernon circuit court. This evidence was proper, not to impeach the

character of defendant, but to explain the degree of his crime. (3) The fourth instruction given by the court properly declares the law. *State v. Talbott*, 73 Mo. 347. No objection can be taken to the sixth instruction given by the court. (4) The court rightly refused instructions, even though they properly declared the law, which were merely repetitions of what had already been given. *State v. Miller*, 67 Mo. 604; *State v. Walton*, 74 Mo. 271; *State v. Jones*, 78 Mo. 278; *State v. Thompson*, 83 Mo. 257.

SHERWOOD, J.—The following is a sufficient outline of the salient facts and features of this case, to enable it to be understood: Appeal from the circuit court of Cass county, from the verdict of a jury finding defendant guilty of murder in the first degree. On the seventeenth day of June, 1886, defendant was convicted of burglary in the second degree in the Vernon circuit court, and sentenced to the penitentiary for a term of three years. In that case he was tried and convicted under the name of Robert Clark. Defendant was confined in the penitentiary until the ninth day of February, 1887, at which time he made his escape. On the nineteenth of August, following, he came to Pleasant Hill, and early in the morning made the acquaintance of Maj. C. C. Dawson. Dawson was assistant station agent for the Missouri Pacific Railway Company at Pleasant Hill. After Dawson made the acquaintance of the defendant, they went to a billiard saloon, and engaged in a game of pool. Dawson, it seems, was successful in every game, but as Tabor claimed to have no money, Dawson settled for the games they played. Tabor invited the crowd in the saloon to come to the bar and take a drink. The barkeeper told Tabor that he would not let him have the drinks unless he had the money to pay. Tabor said he did not have money enough. Dawson remarked, " *If you do not intend to pay, I guess I will*

have to. arrest you and take you to the calaboose.''
Tabor said: "All right, you will have to arrest me
then." Dawson proposed to loan defendant a dollar,
and settled for the drinks himself. They were both
laughing and joking at the time they drank the liquor.

Dawson took Tabor by the left arm, and they walked
out of the saloon arm in arm, laughing and talking, and
were in the best of humor, and it being about 12:30
o'clock, they walked in the direction of the Soldanell
hotel. Dawson was smiling and seemed to be in a good
humor. While they were walking in this manner, con-
versing in a low tone, Dawson was heard to say, "You
will play hell." Tabor then drew his pistol and fired;
the first shot taking effect in the center of Dawson's
chest. Dawson attempted to step behind Tabor in order
to get out of his way. Tabor reached further around
and fired again, the shot taking effect in the left side of
the breast in front of the shoulder. Dawson made
another effort to get behind Tabor; then Tabor reached
further around and fired the third shot, missing Dawson.
Dawson fell to the ground and expired. The pistol Tabor
used was a large forty-four calibre. Dawson was unarmed
at the time, and a portion of the evidence shows that he
made no resistance to Tabor. There is testimony, however,
showing that, at or immediately before the shooting, there
was between Dawson and defendant "a kind of scuffle;
they squirmed around." There was also testimony to the
effect that the scuffle between Dawson and defendant
was quite pronounced, one of the witnesses going so far
as to pronounce it a street fight, though no one pretends
that any blows were struck. The witness who testifies
as just stated, also says that Dawson seemed to be jerk-
ing the defendant around with both hands, so that he
could hardly keep on his feet. But this witness was
some sixty-five yards from the scene of the controversy,
and describes the occurrence very differently from those
who were within a few feet of the parties.

The theory of the prosecution is, that Dawson, who had been playing pool with defendant nearly all the morning, paying for his drinks, etc., and seemed to be fond of his society, was then taking him to dinner ; but that defendant, without any reason therefor, suspected that Dawson was a detective, trying by a ruse to capture and return him to the penitentiary. This theory, however, is founded upon sheer surmise, and has not the slightest support in the testimony. To sustain this theory, evidence was offered and admitted showing that defendant had been confined in the penitentiary and had made his escape as already stated. This evidence was objected to, and its admission is assigned for error.

I. There was no foundation laid for admitting evidence showing that the defendant had been confined in the penitentiary and had escaped therefrom. Evidence of another crime is never admissible unless so connected with the one then being investigated as to show that the commission of the former had something to do with the perpetration of the latter. Unless the apparently collateral crime be brought into a common system, a system of mutually dependent crimes, or unless it be so linked to the crime under trial as to show that the former, though apparently an extraneous offence, is not so in reality, such evidence is not admissible ; because it would be highly unreasonable and unjust to convict a man of the crime charged simply for the reason that he had been guilty of another and distinct offence. Whart. Crim. Evid., secs. 29, 30, 31, 32, 46, 47, 49, 50, and cas. cit.; Best's Evid. (Chamberlayne), sec. 644. In the present case, there was no such obvious connection shown between the crime for which the defendant was sent to the penitentiary, his subsequent escape therefrom, and the crime for which he was tried. The evidence in question admitted by the court did not bear, immediately or mediately, on the matters in dispute. Best's Evid., *supra*.

If it had been developed at the trial, not only that defendant was an escaped convict, and that Dawson became aware of it, and tried to arrest him, then a motive of defendant in shooting Dawson, in order to avoid arrest, and the motive of Dawson in attempting defendant's arrest, if he did attempt it, would have rendered relevant and admissible evidence of defendant's previous crime, and escape from confinement. As it was, however, no foundation being laid, no visible connection between defendant's former criminal act, and the one for which he was tried, being shown, evidence of such former crime and escape was wholly inadmissible. It may indeed be *conjectured* that defendant, an escaped convict, sought to escape from Dawson, under the belief that the latter was trying to arrest him ; but it will not do, upon a *mere conjecture*, to admit evidence which had no other foundation but such conjectural basis. Error was, therefore, committed on this point, and for the same reason like error was committed in giving instruction numbered fifteen, it being based upon such incompetent evidence.

II. This was the fourth instruction given at the instance of the state :

"4. The court further instructs the jury that he who wilfully—that is, intentionally—uses upon another, at some vital part, a deadly weapon, as a loaded pistol or firearm, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend the death which is the probable and ordinary consequence of such an act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart. If, therefore, the jury believe that defendant took the life of Christopher C. Dawson by shooting him in a vital part with a pistol loaded with gunpowder and leaden ball, with a manifest design to use such weapon upon him and with sufficient

time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or provocation, then such killing is murder in the first degree; and while it devolves upon the state to prove the wilfulness, deliberation, premeditation, and malice aforethought, all of which are necessary to constitute murder in the first degree; yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if the jury can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree."

This instruction is taken from *State v. Talbott*, 73 Mo. 347, and has frequently received the approval of this court. *State v. Holme*, 54 Mo. 153; *State v. Underwood*, 57 Mo. 40; *State v. Foster*, 61 Mo. 549. This is enough to say regarding the objection made to the instruction in question.

III. The sixth instruction given by the court of its own motion is the following:

" The jury are instructed that even though you shall find and believe, from the evidence, that the deceased, Christopher C. Dawson, announced his intention to arrest the defendant and take him to the calaboose or cooler, and then proceeded to take hold of defendant's arm and walk away with him, still such facts do not constitute any defence in this cause, nor operate to reduce the offence from murder to manslaughter, unless you shall further find and believe that the defendant had good reason to believe, and did believe, that the deceased really meant and intended to arrest and restrain him— the defendant—against his will, and that defendant believed, and had good reason to believe, that deceased was actually using or was about to use force in such attempt to arrest defendant."

Considering the testimony already set forth, I see

nothing in the instruction which could operate prejudicially to the defendant. The evidence tends very strongly to show that Dawson's taking defendant by the arm and walking away with him towards the hotel, the defendant being an assenting and willing party, and evidently concurring in what every one present regarded as a mere freak of humor, certainly would not by itself afford the defendant any valid ground for using a deadly weapon upon Dawson, nor cut down the crime of slaying him to a lower grade than one of the degrees of murder. The objection to this instruction is, therefore, without merit.

IV. The court also gave instruction twelve of its own motion. This was the stereotyped instruction about bringing on a difficulty, etc. Conceding, for argument's sake, the correctness of this instruction, there was no propriety in giving it, because there is not a particle of evidence in this case showing which party engaged in the fatal occurrence, "brought on the difficulty." Two men, after playing pool and drinking, and cracking their jokes, are seen walking along pleasantly, arm in arm, conversing with each other in a low tone, when suddenly one of them exclaims, "You will play hell," and then, after a brief struggle or scuffle, the other shoots him to death with a pistol. Error was, therefore, committed in giving this instruction, for the reason stated, and that is sufficient to dispose of the point, without adverting to other reasons.

V. Nor do I believe that there was any self-defence in the case. Self-defence, as has been aptly said, is the law of necessity. It is the *dernier ressort;* the exercise of an extreme and supreme right, and is not to be invoked except when other means fail, or are apparently likely to fail owing to the fierceness of the assault, or some other equally pregnant circumstance. Here the record discloses no such basis for calling into activity

"the first law of nature." And that the purpose of the defendant was not to defend himself from any anticipated attack from Dawson, is shown by the persistency with which he continued to fire upon his victim, after all attempts on his part to avoid his murderous aim had ceased. *State v. Gilmore, ante,* p. 554. Besides that, Dawson was unarmed, had not shown, drawn, nor apparently attempted to draw, a weapon ; nor was there any such disparity in the respective sizes of the two men as to induce a reasonable belief in the defendant's mind that Dawson intended or was capable, even if he had threatened, of inflicting any great bodily harm upon him.

On this point, I desire to quote some remarks made by Judge Agnew as being pertinent to the point in hand : "To excuse homicide by the plea of self-defence, it must appear that the slayer had no other possible, or at least probable, means of escaping, and that his act was one of necessity. The act of the slayer must be such as is necessary to protect the person from death or great bodily harm, and must not be entirely disproportioned to the assault made upon him. If the slayer use a deadly weapon, and under such circumstances as the slayer must be aware that death will be likely to ensue, the necessity must be great, and must arise from imminent peril of life, or great bodily injury. If there be nothing in the circumstances indicating to the slayer at the time of his act that his assailant is about to take his life, or do him great bodily harm, but his object appears to be only to commit an ordinary assault and battery, it will not excuse a man of equal or nearly equal strength, in taking his assailant's life with a deadly weapon. In such case it requires a great disparity of size and strength on the part of the slayer, and a very violent assault on the part of his assailant, to excuse it. The disparity on the one hand, and the violence on the other, must be such as to convince the jury that great bodily

harm, if not death, might have been suffered, unless the slayer had thus defended himself, or that the slayer had a reasonable ground to think it would be so. The burthen lies on the prisoner, in such a case, of proving that there was an actual necessity for taking life, or a seeming one so reasonably apparent and convincing to the slayer as to lead him to believe he could only defend himself in that way." *Commonwealth v. Drum*, 58 Pa. St. 9.

VI. The doctrine in the case just cited from Pennsylvania, from which state our statute respecting murder was obtained, that a homicide being proven or admitted by the prisoner, and no countervailing circumstances being evolved by the testimony of the prosecution, the burden is then cast upon the prisoner, to show to the reasonable satisfaction of the jury such circumstances of excuse or palliation as will take away the presumption drawn by the law, that the killing was murder in the second degree, and show that he was guilty of a less crime, or that the homicide was committed in his lawful self-defence, is well settled in this state. *State v. Hays*, 23 Mo. 287 ; *State v. Holme*, 54 Mo. 153 ; *State v. Underwood*, 57 Mo. 40 ; *State v. Grant*, 76 Mo. 236 ; *State v. Anderson*, 89 Mo. 312. This was the rule as to murder at common law, saying nothing of any degree of that crime. 3 Greenl. Evid., sec. 144 ; *Rex v. Greenacre*, 8 C. & P. 35.

VII. Taking the foregoing positions as correct, there being no self-defence established in the case, nor shown by the attendant circumstances, the guilt of the defendant is to be determined on one of these points : (1) Whether he is guilty of murder in the first degree ; (2) murder in the second degree, or (3) of manslaughter in one of its degrees ; and if, upon return of this cause, the evidence is substantially the same as this record discloses, the trial court will not give an instruction to the jury based upon the theory of self-defence ; but will

instruct them so far as above indicated, *i. e.*, in relation to the burden being cast upon the accused, where a homicide is proven, to show circumstances of palliation or excuse.

VIII. I see no error in the refusal of the court to give the instructions asked by defendant, but for the error aforesaid, the judgment will be reversed and the cause remanded. Ray and Black, JJ., concur; Norton, C. J., concurs as to paragraphs V. and VI. As to the other paragraphs, Norton, C. J., and Brace, J., dissent.