THE STATE v. DICKSON, *Appellant.*

1. **Evidence of Identity.** On questions of identity the impressions and beliefs of a witness are competent evidence. It is also competent to identify a dead body by means of articles found upon it. Circumstantial evidence of identity, which leaves no room for reasonable doubt, is sufficient.

2. **Murder:** CORPUS DELICTI: EVIDENCE. The criminal act and defendant's agency in its production, constitute the *corpus delicti.* The proof thereof need not be by direct and positive evidence, but may be by that which is probable and presumptive, if it be strong and cogent and leave no room for reasonable doubt.

3. ———: EVIDENCE: CONCEALMENT. The concealment of the fact of a homicide is presumptive evidence of crime.

4. ———: ———. Misrepresentations, to account for the disappearance of one who has been killed, are competent, as presumptive evidence of guilt.

5. ———: ———: ILL-WILL. Expressions of ill-will and declarations of criminal intention toward one, who shortly afterward is killed, are competent, as presumptive evidence of guilt.

6. **Case Adjudged.** Defendant was found guilty of murder in the first degree for the killing of one M. upon evidence of the finding of a dead body covered with wounds indicating death by violence, the identification of this body as that of M. by the opinions of witnesses based upon resemblances of clothing, of the color of the hair and beard, and the absence of an upper front tooth, and by means of articles found upon the body, the concealment by defendant of the homicide, and his false statements to account for the disappearance of M. after the killing, his expressions of ill-will and declarations of evil intent toward M. shortly prior to his disappearance; *Held,* that this court would not reverse on the ground of failure of evidence to support the verdict.

7. **Murder in the First Degree:** INSTRUCTIONS. Where there is no evidence of any other grade of offense than that of murder in the first degree, it is proper to refuse instructions as to any less grade of homicide.

*Appeal from Stoddard Circuit Court.*—HON. R. P. OWEN, Judge.

AFFIRMED.

The instructions following were asked and given on behalf of the State:

1. If the jury believe from the evidence that, on or about the 11th day of March, 1880, at the county of Stoddard and State of Missouri, the defendant, Thomas T. Dickson, willfully, deliberately, premeditatedly and of his malice aforethought, killed James McNab with any instrument or weapon whatever, they will find the defendant, Thomas T. Dickson, guilty of murder in the first degree, and so state in their verdict. Willfully, as used in this instruction, means intentionally, that is, not accidentally; therefore, if defendant intended to kill, such killing is willful. Deliberately means done in a cool state of the blood, that is, not in a heated state of the blood caused by a lawful provocation; if, therefore, in such state, the defendant, Thomas T. Dickson, formed a design to kill, and did kill, the

act was deliberately done. Premeditatedly, as here used, means thought of beforehand, for any length of time however short. Malice, as used in this instruction, signifies a condition of the mind void of social duty and fatally bent on mischief, or an unlawful intention to kill, or do some great bodily harm to another, without just cause or excuse. Aforethought means thought of beforehand, for any length of time however short, for a moment as well as for a day or month.

2. If the jury believe from the evidence that the defendant, Thomas T. Dickson, made any statement after the commission of the homicide or killing in relation to what had become of James McNab, the jury must consider all he said together, and what he said against himself the law presumes to be true, because against himself; what he said for himself, the jury are not bound to believe, because said in a conversation or conversations proved by the State, but they may believe or disbelieve it as shown to be true or false from all the evidence in the case.

3. The court further instructs the jury that he who willfully, that is intentionally, uses upon another, at some vital part, a deadly weapon of any kind, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death, which is the probable and ordinary consequence of such an act; and if such deadly weapon is used without just cause, he must be presumed to do it wickedly, or from a bad heart. If, therefore, the jury believe from the evidence in this case that the defendant took the life of James McNab by cutting or striking him in a vital part with any deadly weapon whatever, with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or extenuation, then such killing is murder in the first degree, and while it devolves on the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of

which are necessary to constitute murder in the first degree, yet these need not be proven by direct evidence, but may be deduced from all the facts and circumstances attending the killing; and if the jury can satisfactorily and reasonably infer them from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree, and should so find in their verdict.

4. Evidence is of two kinds, direct and circumstantial. Direct is where a witness testifies directly of his own knowledge of the main fact or facts to be proven. Circumstantial evidence is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. If, therefore, the jury believe from the evidence in this case that such facts and circumstances have been proven as to satisfy you beyond a reasonable doubt that the defendant did willfully, deliberately, premeditatedly and of his malice aforethought kill James McNab, as defined by the first instruction given herein, the jury are warranted in finding the defendant guilty as charged, though no witness has testified of his own knowledge as to the actual fact of such killing.

5. Before the jury can convict the defendant of murder in the first degree in this case, they must believe from all the evidence, beyond a reasonable doubt, that he is guilty as charged; but a doubt, to authorize an acquittal, must be a real substantial doubt, arising from a fair view of all the evidence in the case, and not a mere possibility of his innocence.

The instructions following were asked and given on behalf of the defendant.

1. To justify a conviction in this case, the State must prove all the material facts alleged in the indictment against the defendant, beyond reasonable doubt, by evidence entitled to a fair and reasonable degree of credit, and unless

the State has so proven the guilt of the accused, the jury ought to acquit.

2. Before the jury would be justified in convicting the defendant of murder in the first degree, the State must prove that he killed the deceased deliberately, premeditatedly and with malice aforethought, and unless the prosecution has so established his guilt, they ought not to convict.

5. Where the State seeks, as in this case, to convict upon circumstantial evidence only, the inculpatory or criminative facts must, to justify a conviction, be not only consistent with guilt, but should be inconsistent with any other reasonable hypothesis consistent with innocence; and before the jury should convict, they ought to be satisfied from the evidence and facts proven, beyond reasonable doubt, that his guilt has been so established, and, if not so established, you ought to acquit, although you may believe the probabilities of guilt greater than the probabilities of innocence.

7. Before the jury should convict the defendant, they should be satisfied, from the evidence, that the State has established, beyond reasonable doubt, that James McNab is dead, that the body found has been fully identified and proven to be his dead body, that he came to his death by criminal violence, and that the defendant inflicted the violence intentionally, that caused his death, in Stoddard county, Missouri, under such circumstances as to constitute some legal offense, that is, that he was killed by defendant under such circumstances as to be neither justifiable or excusable, and unless you believe from the evidence that the State has so established his guilt, you ought to acquit.

8. The jury are the sole judges of the weight and value of the evidence in the case, and the credit to be given to the testimony of the several persons who have given evidence upon this trial; and in deciding that credit ought to be given to the testimony of any witness, it will be proper to consider the appearance of the witness, the promptness

or reluctance with which he gave his answer, his candor or want of candor, the probabilities or improbabilities of his statements when contrasted with reasonable and known facts, and if from any one or all of these you doubt or disbelieve any portion of the evidence to be true, you are at liberty to disregard and reject all or so much of his testimony as is inconsistent with known and reasonable facts within the common experience of daily life.

The instructions following were asked on behalf of defendant, but refused by the court:

3.   If the jury believe from the evidence that the State has proven all the facts to fully establish that the defendant did kill James McNab; yet if the State has failed to establish the mode and manner of the killing, beyond the fact that he killed him with a deadly weapon in some way unknown, the law presumes the death to have been caused by a wound intentionally inflicted with a deadly weapon, and nothing further appearing, that the offense is murder in the second degree.

4.   Before you should convict the defendant of murder in the second degree, the State must establish that the defendant killed the deceased with malice aforethought and with premeditation.

6.   No inference of any fact is entitled to credit, which is itself drawn from premises which are uncertain; and where circumstantial evidence is alone relied on to establish guilt, the inculpatory circumstances must be proven and not presumed. Presumptions, which the jury are required to make, are not circumstances in proof, and can afford no proper foundation for a further presumption, there being no visible or natural connection between the fact or facts out of which the first presumption arises and the ultimate fact sought to be established. A presumption is an inference of a fact, drawn from other known or admitted facts, and is entitled to credit only when the inference is drawn from such known facts.

9.   Defendant asks the court to instruct the jury upon

the law of murder in the second degree and the several grades of manslaughter and justifiable homicide.

*S. M. Chapman* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

SHERWOOD, J.—The indictment in this case charged the defendant, Thomas T. Dickson, with murder in the first degree, for killing James McNab, and the trial resulted in the defendant's conviction of that degree of homicide. The evidence, for the most part, was circumstantial. The errors assigned may be grouped under three heads : 1st, The failure of the evidence to establish the guilt of the defendant. 2nd, The giving of improper instructions on the part of the State, and the refusal to give proper instructions on the part of the defendant. 3rd, The conduct of the counsel for the State in argument of the cause to the jury. We will consider these points in the order presented.

## I.

And first as to the evidence and the sufficiency thereof. In December, 1879, Dickson and McNab rented a farm from Pasley a few miles from Essex in Stoddard county. McNab boarded with Dickson. There were some large walnut logs in the southwest corner of a field on this farm, and McNab and Dickson were heard to say a few days prior to McNab's disappearance, that they were going to cultivate this field, and were going to bury these logs, as it would be cheaper to do this, than to have a log-rolling. McNab was last seen alive near these logs, at work cutting corn-stalks, late in the evening of March 10th, 1880, some 200 yards from the dwelling house. Smoke and fires were seen near where McNab was at work. Next day Dickson was seen at work in the same field mending log-heaps; and he told Pasley that McNab had gone to Arkansas, to arrest one Buchanan, for the murder of Dodson, and some days thereafter, Dick-

son told the same witness he had buried the logs. From two to five days after McNab was last seen, Dickson called on Pasley, his landlord, stating that he had buried the logs, and demanding pay therefor. He also stated, at various times in the spring of 1880, to several other witnesses that he had buried the logs, and that McNab had gone to Arkansas, for the purpose already mentioned.

McNab owned two horses. About the 1st day of March, 1880, Warren went to the farm rented by Dickson and McNab, to buy a horse of the latter, but not agreeing upon the price, the horse was not bought. Dickson was present at the attempted purchase, and when McNab walked away, Dickson said to Warren: "He can't sell either of those horses, till he pays me. He owes me over $100 for board. He has boarded with me over a year, and has not paid me. He is the d——dest dead beat I ever saw. He shall not eat my bread and meat much longer." About the 8th day of the same month, McNab sold to Azbel a gun for $4, stating that he did so to get money to replevy his horses and to pay for their keeping. After McNab disappeared, both these horses, as well as a chest of tools, remained in Dickson's possession. Dickson said in the presence of another witness, about the 15th day of March, 1880, that McNab went off in his ordinary clothing, leaving everything; that he did not propose to let him take the horses while he was owing him. In the same month Dickson said in the presence of another witness that McNab left his horses and other stuff with him; that McNab owed him $100; that if he came back he could have one of the horses; otherwise he would keep everything.

On the 19th day of March, 1882, an adult male human body was found in the southwest corner of the field, buried under one of the walnut logs, near where McNab was last seen at work. The log was somewhat burned on the under side, and was buried in the ground, the body being buried under the log. One hand of the body seemed burned as well as the lower part of the pants. Two wounds, either

one of which would have proved mortal, were found on the body; one on the right temple, the other on the right side, evidently inflicted by the hand of violence, with some sharp instrument. The former wound pierced the skull and was about three inches long; the latter wound cut two of the ribs in two, and broke three others, bending them inward.

The *corpus delicti*, was in our opinion, sufficiently established. That the human being whose body was found,

1. EVIDENCE OF IDENTITY. came to his death at the hand of violence, admits of no sort of question. That it was identified as that of James McNab, is not, it is true, so conclusively proven, nor need it be. One witness testified : "To the best of my impression it was the body of James McNab." Another testified : "I saw a body that I took to be the body of James McNab, taken from under one of those logs." Other equivalent expressions were used by other witnesses, who were also acquainted with McNab, and all those who had known McNab gave certain reasons as resemblances of clothing, of color of hair and beard, and the absence of an upper front tooth, which induced their belief. On questions of identity, it is not necessary that a witness should swear pointedly; it is only necessary and is of common occurrence, for them to swear that they believe the person to be the same, and the degree of credit to be attached to their evidence, is a question for the jury. *Greenwell v. Crow*, 73 Mo. 638; 1 Greenleaf Ev., § 440; Stark. Ev., 173. And besides, the body was otherwise identified by means of articles found upon it: A quarter of a dollar with a hole in it; two pocket knives; a whetstone; a small glass, and two rings. And it is undoubtedly competent thus to identify the remains found. *State v. Williams*, 7 Jones (N. C.) 446; 3 Greenleaf Ev., § 133. It is not necessary in such cases that the remains be identified by direct and positive testimony ; it suffices if the circumstantial evidence establishes their identity in a manner so

The State v. Dickson.

satisfactory as leaves no room for reasonable doubt on that point. Will's Circ. Ev., 164.

The proof of the *corpus delicti* involves of course two things: 1st, A criminal act; 2nd, The defendant's agency in the production of the act. Wharton Crim. Ev., § 325, and cases cited. "But, (as is well said by an eminent author heretofore cited,) it is clearly established, that it is not necessary that the *corpus delicti* be proved by direct and positive evidence, and it would be most unreasonable to require such evidence. Crimes, and especially those of the worst kinds, are naturally committed at chosen times, and in darkness and secrecy; and human tribunals must act upon such indications as the circumstances of the case present or admit, or society must be broken up. Nor is it very often that adequate evidence is not afforded by the attendant and surrounding facts, to remove all mystery, and to afford such a reasonable degree of certainty as men are daily accustomed to regard as sufficient in the most important concerns of life; to expect more would be equally needless and absurd." In *Burdette's case*, 4 B. & Ald. 121, this subject underwent much discussion, and was elaborately treated by the bench. Mr. Justice Best said: "When one or more things are proved from which experience enables us to ascertain that another, not proved, must have happened, we presume that it did happen, as well in criminal as in civil cases. Nor is it necessary that the fact not proved should be established by irrefragable inference. It is enough if its existence be highly probable, particularly if the opposite party has it in his power to rebut it by evidence, and yet offers none; for then we have something like an admission that the presumption is just. It has been solemnly decided that there is no difference between the rules of evidence in civil and criminal cases. If the rules of evidence prescribe the best course to get at the truth, they must be and are the same in all civilized countries. There is scarcely a criminal case from the highest down to the lowest in which courts of justice do not act

*2. MURDER: corpus delicti: evidence.*

upon this principle." His Lordship added: " It, therefore, appears to me quite absurd to state that we are not to act upon presumption. Until it pleases providence to give us means beyond those our present facilities afford of knowing things done in secret, we must act on presumptive proof, or leave the worst crimes unpunished. I admit where presumption is intended to be raised as to the *corpus delicti*, that it ought to be strong and cogent." Will's Crim. Ev., pp. 158, 159 ; *State v. Williams, supra;* 3 Greenleaf Ev., §§ 30, 131, and cases cited.

Now in the present case the admissions of Dickson, repeatedly made, that he buried the logs, carry with them the rational inference that he dug the hole in the ground for the log and that he placed the body of McNab first in the hole, and then placed the log on top of the body. What was his purpose in thus concealing the fact of the homicide? The only reasonable inference which can be drawn from such premises, is that he did so in the endeavor to conceal his own criminal agency in effecting McNab's death. At least it is " highly probable" that this was the motive that prompted him, and under the authority of *Burdette's case, supra,* this is sufficient; for it is one of the badges of guilt to attempt concealment of the act done ; and the probable inference, therefore, is where a homicide has been committed and the body is concealed, to connect the individual who conceals it with the crime as author or participator. Burrill Circ. Ev., 83.

3. ——: evidence: concealment.

But other facts in this case must not be overlooked, and doubtless were not overlooked by the jury who tried it and weighed the whole evidence when endeavoring to reach the proper conclusion. We allude to the evidently false statements as to the cause of McNab's disappearance, if his body was in fact found buried under the log. These misrepresentations as to the cause of such disappearance could only spring from a consciousness of guilt on Dickson's part which sought protection in false- .

4. ——: ——.

hood, (*Commonwealth v. Goodwin*, 14 Gray 55,) and a desire to divert suspicion from himself, by the fabrication of evidence as to the reason of that disappearance. A common instance of this sort of fabrication, resorted to by the perpetrators of crime with the view to escape detection and its consequences, is where, as here, the accused spreads reports that a missing or murdered man has "gone to a distance," seeking thus to divert suspicion from the scene of the crime and the real criminal. Burrill Circ. Ev., 430, and cases cited.

We allude also to an evident feeling of enmity which Dickson felt toward McNab, as shown by his remarks to —: —: ill-will. Warren. Mr. Burrill, speaking of verbal indications of intended crime, says : "These expressions of ill-will assume a variety of forms, according to the character and strength of feeling which prompts them. Sometimes they are uttered in terms of intense though respectful complaint; attempts being at the same time made to arouse resentment on the part of the persons addressed, against the subject of them; at other times, they are expressed in the undisguised form of opprobrious epithets, charging some injurious act." Ib., 336. As for instance, in *How's case*, the prisoner had called the deceased " a cursed villain, and the greatest enemy he had." 2 Wheeler's C. C., 415. In another case the expression was "he deserves to have his throat cut." *Harrison's case*, 12 State Tr. 841. In another the prisoner said " she wished Mr. Spooner was out of the way; she could not live with him ;" that " she wished old Bogus was in heaven." *Spooner's case*, 2 Chandler Am. Crim. Tr. 20. In one pre-eminently atrocious case of parricide, the malignant passion burst all bounds, and disclosed itself in a torrent of imprecations and curses almost too violent for belief. *Trial of Standsfield*, 11 State Tr. 1396.

We allude also to the remark Dickson made respecting McNab that " He shall not eat my bread and meat much longer !" Such language in view of subsequent events, is

what is termed "declaration of intention." "It is not un-common with persons about to engage in crime, to utter menaces, or to make obscure and mysterious allusions to purposes and intentions of revenge, or to boast to others, whose standard of moral conduct is the same as their own, of what they will do, or to give vent to expressions of revengeful purposes, or of malignant satisfaction at the anticipated occurrence of some serious mischief. Such declarations or allusions are of great moment, when clearly connected by independent evidence with some subsequent criminal action. The just effect of such language is to show the existence of the disposition from which criminal actions proceed, to render it less improbable that a person proved to have used it would commit the offense charged, and to explain the real motive and character of the action." Burrill's Circ. Ev., 338; Will's Circ. Ev., 45.

Taking then the whole evidence in this cause; considering the fact of the dead body having been found with 6. CASE ADJUDGED.    mortal wounds upon it, clearly indicating a death by violence; considering the fact of the defendant having concealed the homicide—he must, according to rational inference, no other agency for the perpetration of the homicide appearing, be regarded as the author of or participator in that crime. Considering the evident feeling of ill-will which he bore McNab; considering the false reports which he circulated respecting his absence; considering the defendant's declarations of criminal intention toward McNab, as verified by subsequent events; considering the identity of the body as having been satisfactorily established as that of McNab by resemblances as to clothing and certain personal peculiarities, as well as by certain articles found on the body; considering in short, all the concomitant circumstances which seem to "coil around the prisoner and fasten him to the guilty deed," it is beyond our province to interfere with the province of the jury, and to declare that their verdict finds no support in the evidence.

## II.

In regard to the instructions :   Taking them as a whole, as well those given for the State as for the defend-
**7. MURDER IN THE FIRST DEGREE: instructions.** ant, we think they correctly stated the law applicable to the facts of this case, as previously announced in this opinion, and as heretofore announced by this court.   The error contained in the first instruction for the State in respect to deliberation, was a harmless one, and has been criticised in the *State v. Talbott*, 73 Mo. 347.   The first, second, third and fifth instructions for the State, in this case, were such as were given in that case.   And the trial court properly refused to instruct the jury on any grade of homicide less than murder in the first degree.   There was evidence from which the jury could well deduce inferences of the perpetration of that grade of homicide, and there was no evidence of a different grade of offense having been committed.   Of consequence, it would have been error to instruct as to any other grade of the offense charged.   *State v. Talbott, supra.*   It is only upon proof of an intentional killing, nothing more appearing, that the law will presume the homicidal act to be murder in the second degree.   *State v. Underwood,* 57 Mo. 40.

## III.

The principle decided in the *State v. Zumbunson,* (at the last term,) controls this one, and prevents a reversal on account of remarks made by the prosecuting attorney.   It only remains to say that the judgment must be affirmed, and the law take its course.   All concur.