The State v. Wisdom.

_____

THE STATE v. WISDOM, *Appellant.*

1. **Criminal Practice : CHANGE OF VENUE.** The trial court in this case did not err in refusing to grant the defendant a change of venue on account of the prejudice of the inhabitants of the county.

2. ———— **: JURORS, COMPETENCY OF.** The court likewise did not err in refusing to defendant a *special venire,* because the regular jurors had heard the evidence on the application for the change of venue, nor did the court err because it refused for the same reason to exclude such jurors from the panel from which the challenges were made.

3. **Evidence : EXPERT.** A witness does not testify as an expert who

describes what he had seen as to a pistol shot and who gives facts and appearances rather than opinions.

4.  **Murder**: INSTRUCTIONS. A series of instructions given on the trial, which was for murder in the first degree, examined and approved.

5.  **Officer Carrying Firearms.** The right of an officer, such as a deputy sheriff, to bear firearms is limited to carrying them in the proper and necessary discharge of his official duties.

6.  **The Judgment** in this cause held valid against the objection that the record failed to show it was rendered at a term of court authorized by law.

*Appeal from McDonald Circuit Court.*—HON. M. G. MCGREGOR, Judge.

AFFIRMED.

*H. C. Young* and *C. W. Thrasher* for appellant.

(1)   The court below committed error in refusing to grant a change of venue in this case for which this cause should be reversed. *People v. Yoakum*, 53 Cal. 566; *State v. Ware*, 69 Mo. 332; *State v. Guy*, 69 Mo. 430; *State v. Bohannon*, 76 Mo. 562.   (2) Even in case of an application for a continuance this court has uniformly held that the discretion of the trial court is a sound legal discretion, and not merely a personal discretion; and when it appears from the record that the trial court has improperly or erroneously exercised that discretion, to the injury of a party, this court will correct the error. *State v. Burns*, 54 Mo. 274; *State v. Sayers*, 58 Mo. 585; *Leabo v. Goode*, 67 Mo. 126.   (3) The jurors who heard the evidence on the application for a change of venue were incompetent to try the cause.   (4) The judgment is void on the record for want of jurisdiction, because the record fails to show that it was rendered at any term of the circuit court of McDonald county authorized by law. (5) The court committed error in giving instruction number three for the state. It is argumentative, it fails to state what constitutes in law "sufficient reason, or cause,

·or extenuation," or what constitutes "just cause or provocation" for the use of a deadly weapon. Instruction number three is further erroneous in permitting a verdict of guilty on the facts stated in it without the jury finding defendant guilty beyond a reasonable doubt. (6) The court erred in not explaining or defining the meaning of the terms "adequate, or reasonable cause, or provocation," used in instruction number five, given on its own motion. *State v. Sharp*, 71 Mo. 218; *State v. Hill*, ·69 Mo. 451. (7) The court erred in giving instruction number seven. It ignores all the elements necessary to constitute murder in the first degree, except deliberation. (8) Instruction number ten given by the court is erroneous in telling the jury that defendant, although a ·deputy sheriff, was only authorized to carry arms about his person "for the proper and necessary discharge of the duties of his office." R. S., secs. 1274-5. (9) The court erred in giving to the jury, of its own motion, instruction twelve. The plain import of the last clause or paragraph in that instruction is, that in passing on and considering the evidence of the defendant, the jury may not only consider the fact that he is the defendant on trial, but, also, any other facts or circumstances affecting the credit to be given the testimony of any witness in the case. (10) The court erred in refusing to give instruction fifteen asked by the defendant to the effect that if the jury find from the evidence that the death of the deceased can be accounted for on any reasonable hypothesis, except the guilt of the defendant, they should find him not guilty. 3 Greenl. Ev., sec. 29.

*D. H. McIntyre*, Attorney General, for the state.

(1) The court heard the testimony of a number of witnesses upon the application for a change of venue and found from such testimony that defendant could have an impartial trial in McDonald county. The finding of the court on that issue is conclusive and will not be disturbed unless it appears to this court that palpable injustice

has been done. *State v. Sayers*, 58 Mo. 585 ; *State v. Whitton*, 68 Mo. 91 ; *State v. Guy*, 69 Mo. 430. There is nothing in this case to show that the trial court abused its discretion and nothing to call for the interference of this court. (2) No exception was saved to the overruling of the application for continuance, and it is not alleged in the motion for new trial that the court erred in denying the motion to continue. It is too late to make any objection upon that point in this court. *State v. Preston*, 77 Mo. 294, and cases cited. (3) The motions for a special venire and to exclude certain jurors from the panel were properly overruled. (4) The evidence of the witness, Williams, as to the apparent range of the ball in the deceased was competent. *State v. Babb*, 76 Mo. 501 ; *Goodwin v. State*, 4 Crim. Law Mag. 565. If the evidence was improper, still it was harmless. *State v. Holme*, 54 Mo. 154 ; *State v. Ellis*, 84 Mo. 207. (5) The instructions given by the court properly declared the law, and defendant has nothing to complain of. *State v. Lewis*, 74 Mo. 222 ; *State v. Erb*, 74 Mo. 199 ; *State v. Kotovsky*, 74 Mo. 247 ; Foster's Crown Law, p. 255 ; *State v. Holme*, 54 Mo. 153 ; *State v. Alexander*, 66 Mo. 158 ; *State v. West*, 69 Mo. 401 ; *State v. Curtis*, 70 Mo. 594 ; *State v. Hollensheit*, 61 Mo. 303 ; *State v. Maguire*, 69 Mo. 197 ; *State v. Zorn*, 71 Mo. 415 ; *State v. Cooper*, 71 Mo. 436. (6) The fifteenth instruction for defendant was properly refused, because it was erroneous. It was not necessary in order to convict that the evidence should exclude every hypothesis but the guilt of the accused. *State v. Schoenwald*, 31 Mo. 147 ; *State v. Christian*, 66 Mo. 138.

DeArmond, C.—Defendant was indicted at the February term, 1884, of the McDonald circuit court, for murder in the first degree, tried at an adjourned term of said court begun in May and extending into July following, and found guilty of the capital offence charged. From that judgment he has appealed to this court.

From the evidence on the part of the state it appears

that on the evening of December 3, 1883, a number of young men went from the village of Saratoga seven or eight miles to a party or dance at the house of one Clark in said county. Of this party, defendant and William Judy, of whose murder defendant stands convicted, were two. Defendant had no horse and Judy allowed him to ride his horse, defendant riding in the saddle and Judy behind. At Clark's, defendant who was acting deputy sheriff, arrested one William Ralston and put him in charge of two of the young men from the neighborhood of Saratoga, Foley and Miller. When the party were preparing to start homeward, Judy, who had mounted his horse, objected to defendant's riding back with him, but wanted him to ride with some other one of the boys. Defendant insisted that he would ride back with Judy, and threatened to blow Judy's brains out if Judy did not allow him to ride back as he came. Defendant then got onto the horse, behind Judy, who wanted him, if he would ride, to ride in the saddle as he rode before. Defendant refused, said he had rode in the saddle coming and Judy must occupy it returning. Judy then wanted defendant to take the horse and let him ride with some of the boys. Defendant said no, he should ride where he was, and urged him with oaths and threats, to "light out" or "move on." Judy and defendant then started together on the same horse, defendant with a pistol in his hand. When they had gone three hundred yards or four hundred yards, they were at a place where the road forks. There the horse took the wrong road, and defendant, with curses and threats, directed Judy to turn him. Judy replied that defendant had the bridle reins in one hand and a pistol in the other, and for him to turn up. Defendant said: "I know it and you turn or I will kill you." A few seconds after, a shot was heard, and defendant exclaimed: "Take that, g—— d——n you!"

The parties who were close by saw no more of defendant, but heard the horse galloping off on the river

road. Judy was found lying on his face in the road, where the shot and the threats and exclamation of defendant were heard, shot above and back of the right ear, and dead. Some of the witnesses say with both hands gloved and thrust into the breast pockets of his overcoat. The witnesses differ in their remembrance of the words used, but substantially agree that William Judy was killed in McDonald county under facts and circumstances about as here stated. It appears that Ernst Lewis and some of the witnesses who came from Clark's after the shot was fired, but did not then know of its effect, followed rapidly for two or three miles on the road they found defendant had taken. None of them made clear their object in so following defendant, though some of them say he cursed them and dared them to follow. There was some evidence, too, that Lewis was dissatisfied with defendant's action in insisting on riding with Judy, and said if defendant would get down or let Judy get down, he would "shoot it out" with defendant. Also, that Lewis was a friend of Judy's, and wept when he found him dead. They were not close by when the shot was fired.

Defendant introduced in evidence the certificate of his appointment as deputy sheriff, with the endorsement of the circuit judge's approval of the appointment, and his oath of office as such deputy. He, also, read in evidence what it was admitted Ernst Lewis would swear, if present, namely : "That on the night of the shooting of Judy, there was an agreement between said Lewis and the parties who were following this defendant, that they would kill the defendant that night before he got home, and that defendant at the time of the shooting had his pistol out to defend himself." Defendant testified about his riding to Clark's with Judy; that he was acting as a deputy sheriff, and had a warrant for Ralston and arrested him after the party broke up; that he and Judy were on friendly terms ; that after he had turned Ralston over to Miller and Foley, he went

out, but did not see them. He continued: "I then went to Mr. Judy's horse. I said to Mr. Judy, 'Let me ride with you.' He said, 'no.' Then I said, 'I must ride.' Ernst Lewis says, 'Don't you get up there, or I will shoot you.' Judy said to me, 'I did not want you to ride here, because some of the boys here have threatened to shoot at you.' I told Judy to get his horse out of here. When about fifty or sixty yards out he called Lewis, and Lewis came and leveled his pistol on me and I drew my pistol. I then told Judy to get us out, to make his horse carry us away from here. His horse went slow. I told John Foley, when they passed, that I would try and keep up with them. They were traveling fast. They passed us two hundred yards before we got to the forks of the road. At the forks they started down the right hand road. I wanted to take the same road they did. The horse started to go up the Saratoga road. I said to the horse, 'Don't go up there or I will shoot your head off,' or 'brains out.' Judy said to me to take the bridle reins just before we got to the forks of the road, and I did so. I had my pistol in my right hand, about this way (witness shows position. The pistol was a self-cocker).

"When in this position, Mr. Judy suddenly caught the pistol with his right hand (this way), and attempted to take it away from me by force. I held onto the pistol and tried to pull it away from him. By a sudden jerk he raised the pistol and pulled so hard on it as to discharge it, but did not pull it out of my hand. When the pistol fired we both went off the horse, he pulling me off. I did not know he was hurt by the shot. I thought the ball had passed between us. I thought it was a trick to get me off the horse. Without stopping, soon as I could, I jumped on the horse and rode on to Saratoga, home. When I had gone three or four hundred yards away from there I found the pistol would not revolve or stand cocked, something broken about it. I did not know where these fellows who were following behind me were. I got away as fast as I could. When I learned Judy was shot, I went and

delivered myself up to the authorities. A spring was broken in the pistol. I did not take the spring out, but had it taken out. I did not think anything or mean any harm to Judy. And all at once Judy caught hold of the revolver and tried to take it out of my hand, and in trying to it went off." On cross-examination he said: "I was riding behind Judy at this time. He jerked me off the horse. I did not drop the pistol. I held onto it, but he came near getting it once. I drew the pistol after I got on the horse, and Lewis drew a pistol on me. I never was very friendly with Lewis. Had no trouble with him going down."

Vaughn, a village blacksmith who repairs guns and pistols, found the trigger spring of defendant's revolver broken the next morning, and thinks such wrenching as defendant described would be apt to break it.

1. The first error complained of is, that the court refused to grant defendant a change of venue on account of the prejudice of the inhabitants of the county. The principal evidence offered in support of the application was that of the sheriff and some of his deputies, that they took defendant and one Garland Mann out of the jail at Pineville and guarded them one night in the woods. That this was done because they had heard rumors that a mob was coming to take Mann out and hang him, and they thought they might take defendant too. That another prisoner charged with murder, and one charged with lesser felony, were left in the jail when defendant and Mann were taken to the woods. That one or two armed men were met in the road, when later they took defendant and Mann to the jail of a neighboring county. That Mann had obtained a change of venue. These witnesses said that in fact no mob came and they did not know of one ever being formed. They took precautions from the rumors they heard. Another witness, a Dr. Nichols, living at Saratoga, testified that in his neighborhood a bitter feeling toward defendant prevailed. That it was reported in his store in February that a mob had been

formed in the county to take the law into their own hands, that the courts did not do their duty. There was more evidence of a similar character, unnecessary to incorporate. There was, also, much evidence showing an absence of prejudice and feeling in many different portions of the county. There is nothing to indicate an abuse of discretion by the court. On the contrary, its action is abundantly sustained by the evidence. *State v. Burgess*, 78 Mo. 234; *State v. Brownfield*, 83 Mo. 448.

2. An application for a continuance was made and overruled, the prosecuting attorney consenting that defendant might read in evidence what he said the absent witnesses, Ernst Lewis and Miller, would swear if present. The statement of what Lewis would swear was, as we have seen, read by defendant as Lewis' evidence. Miller was present and testified for the prosecution to a state of facts widely different from that which, by defendant's expectations, he would testify to ; and defendant did not offer to read the Miller statement. There was no exception taken to any ruling or action respecting the continuance, and we may pass to the next alleged error.

3. Defendant moved the court to issue a special *venire* for a jury, because the regular jury had heard the evidence on the application for a change of venue, and because he did not think he could get a fair trial before the regular jury. No evidence was offered on this motion and no reason appears why it should not have been, as it was, overruled.

4. The defendant next moved the court to exclude ten jurors, naming them, from the panel, because they had heard the evidence on the motion for change of venue, and one of them, Nathaniel Schell, had testified for the state on the hearing. These ten men were sworn and examined on this motion. Some of them had heard all and some of them a part of the evidence on the application for change of venue. Each testified that he had not formed or expressed any opinion as to the guilt or innocence of the accused. Nathaniel Schell had been

called from among the bystanders, he was not subpœnaed, and examined as to whether or not prejudice existed against the defendant in his neighborhood, which he said was twenty or twenty-five miles from the county seat. He answered that he knew of no prejudice against defendant in his township. He had heard no expression against him. "We have heard very little about it up there." The record immediately following the evidence of these jurors on this motion recites that: "All the above members and all others composing the list of the panel of forty men, on their examination touching their qualification as jurors, answered all the questions required by law and showed themselves qualified jurors." There was no error in overruling this motion. There is nothing in the evidence, preserved in the bill of exceptions, on the application for a change of venue, the hearing of which could disqualify one from sitting on the jury. Nothing concerning the facts of the case was spoken of. Schell having been merely called from among the bystanders and his testimony being confined to the question of prejudice and feeling in his neighborhood, and being himself found free from prejudice and opinion, was a competent juror. He was not a "witness" within the meaning of section 1896, Revised Statutes.

5. One Williams, not an expert, who testified for the state, having said he saw a wound in the right side of Judy's head a little behind the right ear, was asked: "From what you saw of the ball as it went in, how did it appear to range?" He replied: "It appeared to range toward the left eye." Defendant objected to this question and answer as incompetent, and because the witness was not an expert and could not testify as one. Further along in his testimony this witness said: "I saw blood on the side of his face; I saw the hole where the ball went in. His left eye was black and apparently shoved out." This witness was not testifying as an expert, but describing what he had seen, giving facts

and appearances rather than opinions.   There is no doubt under the evidence that the shot killed Judy, and this testimony of Williams, even if incompetent, was not material.

Objection was, also, made to a question put to Dr. Duval, a medical expert, as to whether or not a pistol ball, entering the head just above and behind the right ear and ranging toward the left eye, would inflict a mortal wound.   The objection was that there was no evidence upon which to base the question.   The objection being overruled, the witness answered, that if the ball so ranged it would certainly produce death.   The question was based on Williams' testimony, as to the range of the ball as it entered the head and the appearance of the left eye of deceased.   I do not think the question incompetent, or the answer it brought material.

6.   Next are to be considered the alleged errors in the giving and refusing of instructions.   The first instruction is formal and not objected to ; the second, not objected to, is faulty in its definition of " deliberation," but the error here, as in many cases where the like criticism is made, is harmless, since there is no evidence of provocation or heat of passion.   *State v. Ellis*, 74 Mo. 207 ; *State v. Talbott*, 73 Mo. 347.

Defendant insists that the next is erroneous.   It is as follows :

"3.   If the jury believe from the evidence that the defendant wilfully, that is intentionally, used upon said William Judy, at some vital part, a deadly weapon, as a loaded revolver or pistol, in the absence of qualifying facts, defendant must be presumed to know that the effect is likely to be deadly, and knowing this must be presumed to intend death, which is the probable and ordinary consequence of such an act, and if such deadly weapon is used without just cause or provocation he must be presumed to do it wickedly, or from a bad heart, and if the jury believe that defendant took the life of William Judy by shooting him in a vital part with a revolver or

pistol with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason, or cause or extenuation, then such killing is murder in the first degree, and whilst it devolves on the state to prove the wilfulness, deliberation, and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if the jury are satisfied and reasonably infer their existence from all the evidence, they will be warranted in finding defendant guilty of murder in the first degree." This instruction is supported by *State v. Alexander*, 66 Mo. 148; *State v. Wingo*, 66 Mo. 181; *State v. Curtis*, 70 Mo. 594; *State v. Dickson*, 78 Mo. 438. It is almost in the language of instruction three in the *Dickson case*. Besides, in this case, there was direct evidence in the threats before the shooting and in the exclamation immediately following it, of wilfulness, malice aforethought, and deliberation.

The fourth instruction was upon murder in the second degree, and the sixth upon manslaughter in the fourth degree; but since, under the evidence, the killing was murder in the first degree, or excusable, as done by accident, these instructions need not be further noticed.

The fifth instruction is as follows:

"5. Even if the jury believe from the evidence that the defendant was angry with Judy at the time of the shooting, yet if said anger was not the result of some adequate or reasonable cause or provocation, and was on account of Judy not wanting defendant to ride home behind him, the jury will not be authorized for that reason alone in finding that such killing was not done deliberately or done without deliberation." Defendant was not prejudiced by this instruction. There was no provocation.

The seventh is as follows:

"7. Although the jury may believe from the evidence

that the deceased took hold of the revolver of the defendant and a struggle took place between them, yet, if they further believe from the evidence that the defendant intended to shoot the deceased and was threatening to shoot the deceased, and to prevent such shooting by defendant deceased took hold of said revolver, and attempted to take it away from defendant, and in the struggle defendant, intending to shoot deceased, did shoot and kill him, the jury cannot find defendant guilty of manslaughter in the fourth degree, but will be warranted in finding defendant guilty of murder in the second degree if such killing was intentionally done, and thought of beforehand by defendant; and if they further believe from the evidence beyond a reasonable doubt that such killing was deliberately done by defendant, they will find him guilty of murder in the first degree."

Nor has defendant reason to complain of this instruction, for while it, with the fourth, fifth, and sixth, might have have been omitted, the giving of this one, as of those, tended rather to favor defendant than to prejudice him. No objection is here urged against instructions eight and nine, which certainly were favorable to defendant.

"8. Unless the jury believe from the evidence beyond a reasonable doubt that the defendant, at the county of McDonald, and state of Missouri, on or about the third day of December, 1883, shot and killed the deceased, William Judy, and that such killing was done wilfully, premeditatedly, and of malice aforethought, as said terms are defined in these instructions, they cannot find defendant guilty of murder in either the first or second degree, and unless they, also, believe from the evidence, beyond a reasonable doubt, that such killing was done deliberately, they cannot find defendant guilty of murder in the first degree; and unless the jury believe, from the evidence, beyond a reasonable doubt, that defendant is guilty of either manslaughter in the fourth degree, in accordance with the instruction on that sub-

ject, or of murder in the first degree, or second degree, they should acquit him."

"9. If they find, from the evidence, that the deceased and defendant were riding the same horse along the road, the defendant having a pistol in his hand, and that the deceased seized hold of the pistol in the hand of defendant and attempted to take the pistol from defendant by force, and in the scuffle which ensued, the pistol was accidentally discharged and produced the death of the deceased by accident, and without the fault or culpable negligence of the defendant, and without the defendant commencing or bringing on the difficulty with the deceased, the jury will find the defendant not guilty."

"10. The defendant had a right to carry firearms for the proper and necessary discharge of the duties of his office as deputy sheriff."

This is the law. An officer is not privileged to bear arms, because he is an officer, or in recognition of any supposed superiority exempting him from the obligations, under the law, of the average citizen. Sec. 1275, R. S. The right, when it exists, of an officer to carry a weapon, arises out of considerations relative to the discharge of his official duties.

"12. The court instructs the jury, that under the law the defendant, in this case, is a competent witness in his own behalf, and the jury are the sole judges of the credibility of all the witnesses and the weight to be given to their testimony, and in passing on and considering the evidence in the case, the jury may consider the fact that he is the defendant on trial, together with any other fact or circumstance affecting the credit to be given the testimony of any of the witnesses in the case."

Whilst agreeing, in part, with defendant's counsel in their verbal criticism of number twelve, I cannot reach their conclusion that it is erroneous. It is clearly not so. *State v. Maguire*, 69 Mo. 197; *State v. McGinnis*, 76 Mo. 326; *State v. Cook*, *ante*, p. 40. The thirteenth instruction is an unobjectionable one on the credibility of wit-

The State v. Wisdom.

nesses and weight of evidence. The eleventh is the reasonable doubt instruction.

7. It is argued in support of the motion in arrest, that the judgment "is void on the record for want of jurisdiction, because the record fails to show that it was rendered at any term of the circuit court of McDonald county authorized by law." Leaving out of view the presumptions that lie in favor of courts of general jurisdiction, this judgment is not open to the attack made. The record shows that the court regularly convened at the appointed time in February; that on February sixth, defendant was indicted; that on the seventh he was arraigned; and in the entry showing the arraignment it is added, "and this cause is by the court set for trial at the adjourned term of this court, to be held in April, 1884. On Monday, April 28, 1884, court met pursuant to adjournment," etc., and the same day adjourned to May twenty-sixth, on which day defendant filed his application for a change of venue, and the proceedings in the cause were conducted in the regular way. In the motion in arrest this objection to the record is expressed in these words: "That upon the record the said judgment is erroneous." *State v. Brown*, 75 Mo. 317. Upon the record it appears that the defendant was fairly tried in the court of which, but a few months before, he was an officer; before the same judge who approved his appointment; by an impartial jury of his fellow citizens, summoned by his late superior, the sheriff, and his late associates, the deputy sheriffs. There is no pretense that the evidence was not abundant, and, if now, to him "the way of the transgressor is hard," the courts cannot, in the faithful discharge of their duty, relieve him from the anguish that comes of walking in that way. I think the judgment should be affirmed. All concur.