THE PEOPLE *v.* ACEVEDO.

APPEAL from the District Court of San Juan.

No. 412.—Decided April 8, 1912.

CRIMINAL LAW—PETTY LARCENY.—Under our penal laws, in order that the crime of petty larceny by receiving stolen goods may be established it is not necessary to prove that the accused received the stolen goods from the thief himself or his accomplice.

ID.—RECEIPT OF STOLEN GOODS—ELEMENT OF CRIME.—The element of the crime
    of larceny for having received stolen property is to have received it from
    any other person knowing that it was stolen, the fact that it was received
    from the person who stole it or who knew that it was stolen not being an
    essential element.

ID.—KNOWLEDGE THAT GOODS WERE STOLEN—CIRCUMSTANTIAL EVIDENCE.—An
    examination of the evidence in this case shows that the stolen revolvers were
    sent to the defendant by a dealer in second-hand goods and were marked
    with the letters P. I. showing that they belonged to the Insular police,
    these marks being well known in the Island even by those who cannot read,
    and these circumstances together with the fact that the revolvers were found
    in the possession of the defendant shortly after they were stolen show clearly
    his guilt.

ID.—RECEIPT OF STOLEN GOODS—MALICIOUS INTENT.—Upon examining the cir-
    cumstances surrounding the commission of the crime charged in the case at
    bar it clearly appears that the defendant received the stolen goods with
    malicious intent.

The facts are stated in the opinion.

*Mr. Eugenio Benítez Castaño* for appellant.

*Mr. Charles E. Foote, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a prosecution for petty larceny. Under our Penal
Code as defined, specified and punished by Chapter V of Title
XVII larceny includes various offenses which would not be so
considered at common law. The crime is divided into grand
and petty larceny according to the circumstances of the act
of theft and the nature and value of the property stolen.
When the article is taken from the person of another, or when
it consists of certain domestic animals, or is of the value of
$50 or upwards the crime is grand larceny; all other acts of
theft are classified as petty larceny.

Under section 438 of the Penal Code, as amended by the
Act of March 7, 1908 (Sess. Acts 1908, p. 93), the reception
of stolen property, knowing the same to be stolen, is punish-
able as larceny by imprisonment in jail for one year or less
or in the penitentiary not exceeding five years, according as
the value equals or exceeds $50, or falls below that sum. This
crime may then, under our statute, be considered as a species
of larceny, and if the value of the property received with

guilty knowledge is less than $50 may be classified as petty larceny and is a misdemeanor.

The defendant on December 15, 1911, was found guilty and sentenced to six months' imprisonment and the payment of costs. From this judgment an appeal was immediately taken to this court. After some delay, made at the instance of the appellant, this cause was heard on the 12th instant and five days conceded to the parties to file additional briefs, and the same were submitted.

The basis of the appeal, as it is gathered from the record, including the briefs, is that the facts proven on the trial do not show that the accused committed the offense charged. It is agreed between the representatives of The People and the defendant that in order to convict the accused of the crime charged it must be proved:

1. That the revolvers had been previously stolen by some other person;

2. That the defendant bought or received them from another person;

3. That at the time of buying or receiving them he knew that they were stolen;

4. That he bought or received them with a malicious intent.

All of the testimony is set out in the record, and it has been reviewed, discussed and analyzed in the briefs. Four witnesses testified on each side besides the defendant, who became a witness in his own behalf.

I. It cannot be reasonably doubted that at least two of the revolvers were stolen from the quarters of the Insular Police. This is not seriously controverted and needs no extended comment. *People* v. *Clausen,* 120 Cal., 383.

II. Nor can it be denied that the accused received the revolvers from another person. The accused himself and other witnesses unite in asserting this fact. It is not necessary, under our statute, to prove that the defendant received the stolen goods from the thief himself or his agent. Wharton has been cited as an authority to maintain the proposition that

this is necessary. But he does not announce this doctrine as one of universal application and other authorities fail to sustain it as such.

Clark and Marshall discuss the matter clearly and may be quoted:

"It has been said without qualification that, to render one guilty of receiving stolen goods, he must receive them from the thief, or from an innocent agent of the thief, and not from a guilty receiver; and the reason given is that in his hands, and as to him the goods are not stolen goods. But this is not true under all of the statutes. The common-law offense is not committed by one who receives stolen goods from a guilty receiver, and who does not know the thief, for in such a case there is no misprision of felony nor componnding of felony. So, where a receiver is punishable as an accessory after the fact of the thief, as under the earlier English statutes, and similar statutes in this country, the goods must be received from the thief. But where the act of receiving is made a substantive offense, whether a felony or a misdemeanor, as by the present English statute, and by most of the statutes in this country, without reference to the person who stole the property, the gist of the offense is the receiving and having property that has been stolen, knowing that it has been stolen, and there is no good reason why the offense should not be considered as committed by any one who receives such property with the necessary guilty knowledge, whether he receives it directly from the thief, or from the guilty receiver. There are decisions which fully sustain this view. A person is certainly guilty of this offense if he receives stolen property from an innocent agent of the thief with the necessary guilty knowledge and intent.

"In *Anderson* v. *State*, 38 Fla., 3, the statute provided that whoever should buy, receive, or aid in the concealment of stolen property, knowing the same to have been stolen, should be punished, and it was held that an indictment under the statute need not name the thief, nor the person from whom the goods were received. 'The buying and receiving of stolen goods,' said the court, 'knowing the same to have been stolen, is thereby made a substantive offense. The offense denounced by the statute is not buying, receiving, etc., stolen property from the thief himself, or from any other particular person, but buying or receiving, etc., such property, knowing it to be stolen, from any person whatsoever.'

"There is a decision against this view in *Foster* v. *State*, 106 Ind., 872, in which the court cited Bishop and Wharton and two earlier Indiana cases *Kaufman* v. *State*, 49 Ind., 248, and *Owen* v. *State*, 52 Ind., 379. Neither of these cases, however, is in point, and while the decision is supported by Bishop and Wharton, neither of these writers is sustained by the authorities cited by them. There is no reason for saying that property ceases to be 'stolen property,' i. e., property that has been stolen, as soon as it is delivered to a person who knows it has been stolen." 2 Clark and Marshall, Law of Crime, pp. 878 and 879."

III. The guilty knowledge of the accused is the main point on which this case turns. Is it shown by the evidence that at the time of purchasing or receiving the revolvers the accused knew that they had been stolen? Guilty knowledge is a state of mind which from the nature of the matter can be proved only by circumstances or the admissions of the accused. There are various circumstances surrounding this transaction which go to show the mental state of the accused at the time he committed the act which is denounced as unlawful. Let us examine them in some detail.

(*a*) The defendant received a package sent him by one Aliceaga containing the revolvers and sent back to the sender $7.50. There was no bargaining, though the articles are not shown to have a fixed market price and being second-hand goods, in which the defendant dealt, could not have a definite value. This circumstance may at least be considered as very suspicious.

(*b*) It is strange that the accused, being a dealer in second-hand goods and having a store where his business was carried on, should send these articles to Carolina to be sold by a wayfaring man who does not seem to have been engaged in the business of a peddler or to have had any special facilities for making such sales.

(*c*) The pistols were marked "I. P." These letters indicate property belonging to the Insular Police which are not the subject of traffic and cannot be lawfully sold. Though

the defendant may not have known how to read and write, these marks are so well known in this Island that he can hardly be presumed to be ignorant of their meaning.

(d) The possession of the property recently after it had been stolen is a strong circumstance generally regarded as indicating guilt, unless satisfactorily explained. It was not so explained in this case. All these incriminatory facts taken together fully justify the court in finding that the defendant, at the time he acquired possession of these revolvers, knew they had been stolen. *People* v. *Clausen,* 120 Cal., 382; *Weinberg* v. *People,* 208 Ill., 15; *Huggins* v. *People,* 135 Ill., 244; *State* v. *Feuerhaken,* 65 N. W. Rep., 301.

IV. In regard to the contention of the appellant, that the facts set forth in the record do not show that he bought or received the goods with a malicious intent, it is scarcely necessary to say more than that all the circumstances surrounding the transaction must be taken together, and when so considered they amply show the malicious intent.

Malice, in criminal law, has been defined as "the doing a wrongful act intentionally without just cause or excuse. A wicked and mischievous purpose which characterized the perpetration of an injurious act without lawful excuse." [4 Bar and Cr., 255; 9 Metc., 104], 2 Bouvier Law Dict., 295.

Another legal lexicographer defines malice thus:

"In its legal sense, this word does not simply mean ill will against a person, but signifies a wrongful act done intentionally, without just cause or excuse." [4 Bar. and Cr., 255], Black Law Dict., 745.

In Words and Phrases Judicially Defined, volume 5, on page 4300, we find the following definition:

"Malice, in the law of murder, does not mean mere spite, ill will, or dislike, as it is ordinarily understood, but it means that condition of the mind which prompts one person to take the life of another without just cause or provocation, and it signifies a state of disposition which shows a heart regardless of social duty, and fatally bent on mischief." Referring among many others to the following au-

thorities: *State* v. *Dickson,* 78 Mo., 438, 441; *Martínez* v. *State,* 30 Tex. App., 129, 28 Am. St. Rep., 895; 16 S. W., 767, 768; *Territory* v. *Hart,* 7 Mont., 489, 17 Pac., 718, 722; *United States* v. *Boyd,* 45 Fed. Rep., 851, 857; *United States* v. *Lewis,* 111 Fed. Rep., 630, 632.

Our statute contains the following definition:

"Fourth. The words 'malice' and 'maliciously' import the doing of a wrongful act, intentionally, without just cause or excuse, a conscious violation of the law to the prejudice of another." Penal Code, sec. 559, p. 615.

Malice in its legal sense means the intentional doing of a wrongful act toward another without legal justification or excuse. 30 Tex. Ct. App. Rep., 138; *Martínez* v. *State.*

Applying the law as stated to the facts as found in the record there can be no doubt as to the malicious intent with which the crime was committed.

After a careful review of all the evidence contained in the record no doubt remains in the mind of the court that all the elements of the crime charged existed and were proven and that the judgment of conviction ought to stand.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.